Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/04/2020 09:12 AM CST

State of Nebraska ex rel. Terry Wagner, relator,
v. Robert B. Evnen, Secretary of State of the
State of Nebraska, respondent, and Nebraskans
for Sensible Marijuana Laws, also known as
Nebraskans for Medical Marijuana,
et al., intervenors.

___ N.W.2d ___

Filed September 10, 2020.    No. S-20-623.

1. **Constitutional Law: Justiciable Issues: Appeal and Error.** Questions of justiciability and of constitutional interpretation that do not involve factual dispute are questions of law.
2. **Appeal and Error.** An appellate court reviews questions of law de novo, drawing independent conclusions irrespective of any decision made below.
3. **Mandamus: Words and Phrases.** Mandamus is a law action and represents an extraordinary remedy, not a writ of right.
4. **Mandamus.** Whether to grant a writ of mandamus is within a court's discretion.
5. **Courts: Justiciable Issues.** Before reaching the legal issues presented for review, courts must determine whether the issues presented are justiciable.
6. **____: ____.** Ripeness is a justiciability doctrine that courts consider in determining whether they may properly decide a controversy.
7. **Courts.** The fundamental principle of ripeness is that courts should avoid entangling themselves, through premature adjudication, in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated.
8. **Initiative and Referendum: Justiciable Issues.** A challenge to a voter ballot initiative based on substantive provisions of law is not ripe before an election because an opinion on the substantive challenge based on the contingent future event of the measure's passage would be merely advisory.

9. ____: ____. A preelection challenge based on the procedural require-
ments to a voter ballot initiative's placement on the ballot is ripe
for resolution.

10. **Initiative and Referendum.** A challenge to the legal sufficiency of a
ballot initiative is a claim based on procedural requirements.

11. **Constitutional Law: Statutes: Initiative and Referendum: Appeal
and Error.** Because the voter ballot initiative power is precious to the
people, an appellate court construes statutory and constitutional provi-
sions dealing with voters' power of initiative liberally to promote the
democratic process.

12. **Constitutional Law: Statutes: Initiative and Referendum.** By peti-
tion, the initiative power may be invoked and, if the appropriate
procedures are followed, used to propose statutory or constitutional
amendments to the state's voters without resorting to the Nebraska
Legislature.

13. **Constitutional Law: Initiative and Referendum.** The people's reserved
power of the initiative and their self-imposed requirements of procedure
in exercising that power are of equal constitutional significance.

14. ____: ____. The single subject rule under Neb. Const. art. III, § 2,
was adopted by voter ballot initiative to avoid, among other things,
logrolling.

15. **Initiative and Referendum: Words and Phrases.** Logrolling is the
practice of combining dissimilar propositions into one voter initiative so
that voters must vote for or against the whole package even though they
only support certain of the initiative's propositions.

16. **Courts: Initiative and Referendum.** Courts in Nebraska follow the
natural and necessary connection test for determining whether a voter
ballot initiative violates the single subject rule.

17. **Initiative and Referendum.** Under the natural and necessary connec-
tion test, where the limits of a proposed law, having natural and neces-
sary connection with each other, and, together, are a part of one general
subject, the proposal is a single and not a dual proposition.

18. ____. The controlling factors in an inquiry under the natural and neces-
sary connection test are the initiative's singleness of purpose and the
relationship of other details to its general subject.

19. ____. An initiative's general subject is defined by its primary purpose.

20. **Courts: Initiative and Referendum.** A court's analysis under the single
subject rule begins by characterizing the general subject.

21. **Constitutional Law: Initiative and Referendum.** A general subject
must not be characterized too broadly when considering an amendment
to the constitution.

22. **Initiative and Referendum.** A general subject must be characterized at a level of specificity that allows for meaningful review of the natural and necessary connection between it and the initiative's other purposes.

23. **Constitutional Law: Initiative and Referendum.** The single subject requirement may not be circumvented by selecting a general subject so broad that the rule is evaded as a meaningful constitutional check on the initiative process.

24. **Words and Phrases.** Necessary means something on which another thing is dependent or contingent.

25. **Declaratory Judgments: Justiciable Issues.** The function of declaratory relief is to determine a justiciable controversy that is either not yet ripe by conventional remedy or, for other reasons, is not conveniently amenable to usual remedies.

26. **Declaratory Judgments.** Although declaratory judgment actions are permitted by statute, in certain circumstances under the Uniform Declaratory Judgments Act, a declaratory judgment will generally not lie where another equally serviceable remedy is available.

27. **Mandamus: Declaratory Judgments.** If a writ of mandamus would be adequate and equally serviceable, then a declaratory judgment will not lie.

28. **Mandamus: Proof.** Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear duty to perform the act requested, and (3) no other plain and adequate remedy is available in the ordinary course of law.

29. **Public Officers and Employees: Initiative and Referendum.** Nebraska law imposes on the Secretary of State a nondiscretionary duty to determine the legal sufficiency of ballot measures and withhold any legally insufficient measure from the ballot.

30. **Initiative and Referendum.** The single subject rule was adopted by voters to protect against voter ballot initiatives that failed to give voters an option to clearly express their policy preference.

31. **Constitutional Law: Courts: Initiative and Referendum.** Just as courts must respect and give effect to the power the people have reserved to themselves to amend the constitution through initiative measures, courts are obliged to give meaningful effect to the people's self-imposed limitations on that power.

Original action. Writ of mandamus granted.

Mark A. Fahleson, of Rembolt Ludtke, L.L.P., for relator.

Jason W. Grams and Michael L. Storey, of Lamson, Dugan & Murray, L.L.P., and Teri L. Vukonich-Mikkelsen, of Reisinger Booth & Associates, P.C., L.L.O., for intervenors.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## I. INTRODUCTION

The Nebraska Secretary of State certified a voter ballot initiative to create a constitutional right for persons with serious medical conditions to produce and medicinally use cannabis, subject to a recommendation by a licensed physician or nurse practitioner. A Nebraska resident challenged the decision, claiming the initiative violated the single subject rule under Neb. Const. art. III, § 2, and should be withheld from the November 2020 general election ballot. We reverse the Secretary of State's decision and issue a writ of mandamus directing him to withhold the initiative from the November 2020 general election ballot.

## II. FACTUAL BACKGROUND

A voter ballot initiative petition to create a constitutional right for persons with serious medical conditions to produce and medicinally use cannabis, subject to a recommendation by a licensed physician or nurse practitioner, was filed with the Secretary of State, Robert B. Evnen, on February 5, 2019, to certify it for inclusion on the November 2020 general election ballot. Nebraskans for Sensible Marijuana Laws, a ballot question committee, as well as two state senators, Adam Morfeld and Anna Wishart, sponsored the petition. The objective of the petition was "to amend the Nebraska Constitution to provide the right to use, possess, access, and safely produce cannabis, and cannabis products and materials, for serious medical conditions as recommended by a physician or nurse practitioner."

To accomplish this objective, the sponsors proposed the "Nebraska Medical Cannabis Constitutional Amendment" (NMCCA), an addition of Neb. Const. art. XIX, § 1. If approved, the NMCCA would, in nine subsections, (1) establish a constitutional right for adults 18 years or older with serious health conditions "to use, possess, access, purchase, and safely and discreetly produce" medicinal cannabis as recommended by a licensed physician or nurse practitioner; (2) establish the same right for minors younger than 18 years of age, provided they obtain the consent of a parent or legal guardian; (3) provide that private entities "may grow, cultivate, process, possess, transport, sell, test, or transfer possession of cannabis, cannabis products, and cannabis-related equipment for sale or delivery to an individual authorized" under the first two subsections; (4) decriminalize the medicinal use of cannabis for persons who qualify under the first two subsections; (5) subject persons' rights to use cannabis under the first two subsections to reasonable laws, rules, and regulations; (6) set forth certain limitations on the expansion of medicinal cannabis; (7) provide that employers are not required to allow employees to work while impaired by cannabis; (8) provide that insurance providers are not required to provide coverage for the use of cannabis; and (9) define cannabis.

Evnen transmitted the NMCCA to the Nebraska Attorney General, Douglas J. Peterson, to prepare a statement explaining the NMCCA and the effect of a vote for or against it. Peterson then provided the NMCCA's sponsors with a proposed ballot title and explanatory statement. According to Peterson, the NMCCA, if included on the November 2020 general election ballot, should be presented to voters by the following text:

[EXPLANATORY STATEMENT]

*A vote "FOR" will amend the Nebraska Constitution to: (1) Provide individuals the right to use, possess, access, purchase, and produce cannabis, cannabis products, and cannabis-related equipment for serious medical conditions if recommended by a licensed physician*

*or nurse practitioner, subject to certain exceptions and reasonable laws, rules, and regulations; and (2) Allow private entities and their agents operating in Nebraska to grow, cultivate, process, possess, transport, sell, test, or transfer possession of cannabis, cannabis products, or cannabis-related equipment for sale or delivery to authorized individual users, subject to reasonable laws, rules, and regulations, including licensing.*

*A vote "AGAINST" will not cause the Nebraska Constitution to be amended in such a manner.* [(Emphasis in original.)]

[BALLOT TITLE]

Shall the Nebraska Constitution be amended to: (1) Provide individuals the right to use, possess, access, purchase, and produce cannabis, cannabis products, and cannabis-related equipment for serious medical conditions if recommended by a licensed physician or nurse practitioner, subject to certain exceptions and reasonable laws, rules, and regulations; and (2) Allow private entities and their agents operating in Nebraska to grow, cultivate, process, possess, transport, sell, test, or transfer possession of cannabis, cannabis products, or cannabis-related equipment for sale or delivery to authorized individual users, subject to reasonable laws, rules, and regulations, including licensing?

Peterson also transmitted a copy of his proposed explanatory statement and ballot title to Evnen to determine whether to certify the NMCCA for inclusion on the November 2020 general election ballot.

On August 26, 2020, Terry Wagner, a Nebraska resident, filed an objection with Evnen, claiming the NMCCA was legally insufficient. The NMCCA's sponsors filed letters disputing Wagner's claim. Both parties also submitted additional briefing to Evnen in the form of emails.

On August 27, 2020, Evnen issued a written determination that the NMCCA was legally sufficient. He found that the

NMCCA had only one general subject—"to legalize the use of cannabis in this state for persons with serious medical conditions"—and that any other purposes were naturally and necessarily connected to that primary purpose. Accordingly, Evnen wrote that the NMCCA did not violate the single subject rule under Neb. Const. art. III, § 2, and that he would "not withhold it from the ballot unless otherwise ordered by a court of competent jurisdiction."

On August 28, 2020, Wagner filed with this court an application for leave to commence an original action. According to Wagner, this court's review of Evnen's decision was necessary because only 14 days remained until the deadline set by Neb. Rev. Stat. § 32-801 (Reissue 2016) for Evnen to certify the issues appearing on the November 2020 general election ballot.

We granted Wagner leave to commence an original action. Based on Wagner's verified petition for writ of mandamus, we issued an alternative writ of mandamus directing Evnen to show cause why the NMCCA should not be withheld from the November 2020 general election ballot. The NMCCA's sponsors intervened and essentially aligned their arguments with Evnen's decision in defense of the NMCCA's legal sufficiency under the single subject rule.

We note at the outset that the parties do not dispute that the NMCCA petition garnered sufficient signatures and complied with all procedural requirements, except the single subject rule. We therefore presume such other requirements were met and would not prevent placement of the NMCCA on the general election ballot.

### III. ASSIGNMENTS OF ERROR

Wagner (1) contends that Evnen erred in failing to find the NMCCA legally insufficient for violating the single subject rule under Neb. Const. art. III, § 2, and (2) prays that this court enter a declaratory judgment finding the NMCCA legally insufficient and issue a writ of mandamus directing Evnen to withhold it from the November 2020 general election ballot.

## IV. STANDARD OF REVIEW

[1,2] Questions of justiciability and of constitutional interpretation that do not involve factual dispute are questions of law.[1] An appellate court reviews questions of law de novo, drawing independent conclusions irrespective of any decision made below.[2]

[3,4] Mandamus is a law action and represents an extraordinary remedy, not a writ of right.[3] Whether to grant a writ of mandamus is within a court's discretion.[4]

## V. ANALYSIS

### 1. Justiciability

[5-7] Before reaching the legal issues presented for review, courts must determine whether the issues presented are justiciable.[5] Ripeness is a justiciability doctrine that courts consider in determining whether they may properly decide a controversy.[6] The fundamental principle of ripeness is that courts should avoid entangling themselves, through premature adjudication, in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated.[7]

[8,9] A challenge to a voter ballot initiative based on substantive provisions of law is not ripe before an election because "[a]n opinion on the substantive challenge based on the contingent future event of the measure's passage would be

---

[1] See, *State v. Said*, 306 Neb. 314, 945 N.W.2d 152 (2020) (constitutional interpretation); *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019) (justiciability).

[2] See *State v. Said, supra* note 1.

[3] See *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

[4] See *id.*

[5] See *In re Interest of Giavonni P.*, 304 Neb. 580, 935 N.W.2d 631 (2019).

[6] *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018).

[7] *Id.*

merely advisory."[8] In contrast, a preelection challenge based on "the procedural requirements to [a voter ballot initiative's] placement on the ballot" is ripe for resolution.[9]

[10] Here, Wagner challenges only the legal sufficiency of the NMCCA. We have held that a challenge to the legal sufficiency of a ballot initiative is a claim based on procedural requirements.[10] Hence, Wagner's claim is ripe for our review before the election.

## 2. Legal Sufficiency

Wagner's claim is that Evnen erred in finding the NMCCA legally sufficient. According to Wagner, the NMCCA violates the single subject rule under Neb. Const. art. III, § 2, because its general subject and various other provisions lack any natural and necessary connection with each other. We agree.

### (a) Single Subject Rule

[11-13] Under the Nebraska Constitution, the voter ballot initiative is "[t]he first power reserved by the people . . . ."[11] Because the voter ballot initiative power is precious to the people, we construe statutory and constitutional provisions dealing with voters' power of initiative liberally to promote the democratic process.[12] By petition, the initiative power may be invoked and, if the appropriate procedures are followed, used to propose statutory or constitutional amendments to the state's voters without resorting to the Nebraska Legislature.[13] "The people's reserved power of the initiative and their

---

[8] *Id.* at 35, 917 N.W.2d at 158.

[9] *Id.*

[10] See *State ex rel. Loontjer v. Gale*, 288 Neb. 973, 853 N.W.2d 494 (2014).

[11] Neb. Const. art. III, § 2.

[12] See *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019), *cert. denied* ___ U.S. ___, ___ S. Ct. ___, 206 L. Ed. 2d 844 (2020).

[13] See *id.*

self-imposed [requirements of procedure in exercising that power] are of equal constitutional significance."[14]

[14,15] One constitutional requirement of the voter ballot initiative procedure is the single subject rule. Under the Nebraska Constitution, "[i]nitiative measures shall contain only one subject."[15] This requirement was adopted by voter ballot initiative in 1998 to avoid, among other things, logrolling.[16] Logrolling is the practice of combining dissimilar propositions into one voter initiative so that voters must vote for or against the whole package even though they only support certain of the initiative's propositions.[17]

[16-19] We follow the natural and necessary connection test for determining whether a voter ballot initiative violates the single subject rule.[18] Under the test, ""'"[W]here the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition."'""[19] The controlling factors in this inquiry are the initiative's singleness of purpose and the relationship of other details to its general subject.[20] An initiative's general subject is defined by its primary purpose.[21]

Although we have applied similar natural and necessary connection tests based in the common law to municipal voter ballot initiatives and legislatively proposed constitutional

---

[14] *State ex rel. Lemon v. Gale*, 272 Neb. 295, 304, 721 N.W.2d 347, 356 (2006).

[15] Neb. Const. art. III, § 2.

[16] See 1997 Neb. Laws, L.R. 32CA, § 1; *Christensen v. Gale, supra* note 6.

[17] *Christensen v. Gale, supra* note 6.

[18] *Id.*

[19] *Id.* at 32, 917 N.W.2d at 156 (quoting *State ex rel. Loontjer v. Gale, supra* note 10). See, also, *Munch v. Tusa*, 140 Neb. 457, 300 N.W. 385 (1941).

[20] *Christensen v. Gale, supra* note 6.

[21] *Id.*

amendments,[22] we have only applied the test based in the single subject rule, Neb. Const. art. III, § 2, to a voter ballot initiative once before, in *Christensen v. Gale*.[23]

At issue in *Christensen* was a voter ballot initiative to amend the Medical Assistance Act[24] to (1) expand Medicaid coverage to certain lower income adults in Nebraska and (2) direct the Nebraska Department of Health and Human Services to take actions necessary to maximize federal funding for medical assistance in the State.[25] Objectors claimed that these objectives qualified as impermissible dual purposes.[26]

We upheld the voter ballot initiative.[27] First, we determined from the initiative's text that its general subject was "the expansion of Medicaid."[28] Second, we found that although the initiative's text indicated a secondary purpose was maximizing federal funding, the secondary purpose did not violate the single subject rule because it "ha[d] a natural and necessary connection" to expansion of Medicaid,[29] namely, increased federal funding would enable the State to pay to expand Medicaid coverage.[30] Therefore, "maximizing federal funding for that expansion [wa]s a detail related to the singleness of purpose of expanding Medicaid."[31] While some voters might

---

[22] See, e.g., *State ex rel. Loontjer v. Gale, supra* note 10 (legislatively proposed constitutional amendment to allow certain horse track wagers); *City of Fremont v. Kotas*, 279 Neb. 720, 781 N.W.2d 456 (2010) (municipal voter ballot initiative to regulate undocumented immigrants), *abrogated on other grounds, City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011).

[23] *Christensen v. Gale, supra* note 6.

[24] See Neb. Rev. Stat. §§ 68-901 to 68-994 (Reissue 2018 & Supp. 2019).

[25] *Christensen v. Gale, supra* note 6.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 34, 917 N.W.2d at 157.

[29] *Id.*

[30] See *id.*

[31] *Id.*

have been in favor of Medicaid expansion but not expanding federal funding, the dissimilarity between these purposes was not so great that they "create[d] a risk of confusion and logrolling."[32]

### (b) Right to Produce and Medicinally Use Cannabis

[20-23] Our analysis here under the single subject rule begins by characterizing the NMCCA's general subject. We have stated before that a general subject must not be characterized too broadly when considering an amendment to the constitution.[33] An overly broad general subject might allow any secondary purpose to arguably be naturally and necessarily connected to it.[34] Instead, a general subject must be characterized at a level of specificity that allows for meaningful review of the natural and necessary connection between it and the initiative's other purposes. As two other jurisdictions have stated in a similar context, "'the single subject requirement may not be circumvented by selecting a [general subject] so broad that the rule is evaded as a meaningful constitutional check'" on the initiative process.[35]

At an appropriate level of specificity, then, the NMCCA's general subject is to create a constitutional right for persons with serious medical conditions to produce and medicinally use an adequate supply of cannabis, subject to a recommendation by a licensed physician or nurse practitioner. This primary

---

[32] *Id.* at 35, 917 N.W.2d at 158.

[33] See *State ex rel. Loontjer v. Gale, supra* note 10.

[34] *Id.* See, e.g., Richard Briffault, *The Single-Subject Rule: A State Constitutional Dilemma*, 82 Alb. L. Rev. 1629, 1637 (2019) (noting, with disapproval, that "some state courts have approved as constitutionally permissible subjects such broad topics as 'land,' 'education,' 'transportation,' 'utilities,' 'state taxation,' 'public safety,' 'capital projects,' and 'operations of state government'").

[35] *Gregory v. Shurtleff*, 299 P.3d 1098, 1112 (Utah 2013) (quoting *Wirtz v. Quinn*, 2011 IL 111903, 953 N.E.2d 899, 352 Ill. Dec. 218 (2011)).

purpose is evident from the text of subsections (1) and (2) of the NMCCA:

(1) An individual who is eighteen years of age or older, if recommended by a licensed physician or nurse practitioner, has the right to use, possess, access, purchase, and safely and discreetly produce an adequate supply of cannabis, cannabis products, and cannabis-related equipment to alleviate a serious medical condition. Such individual may be assisted by a caregiver in exercising these rights.

(2) An individual who is under eighteen years of age, if recommended by a licensed physician or nurse practitioner and with the permission of a parent or legal guardian with responsibility for health care decisions of such individual, has the right to use cannabis, cannabis products, and cannabis-related equipment to alleviate a serious medical condition. Such individual may be assisted by a parent, legal guardian, or caregiver, who may possess, access, purchase, and safely and discreetly produce an adequate supply of cannabis, cannabis products, and cannabis-related equipment on behalf of the individual.

Also in support of this primary purpose, subsection (5) delegates authority to the Legislature and administrative agencies to promulgate laws, rules, and regulations. Subsection (9) defines the term "cannabis."

Further evidence that this is the NMCCA's general subject is found in the object statement submitted by the NMCCA's sponsors: "The object of this petition is to: Amend the Nebraska Constitution to provide the right to use, possess, access, and safely produce cannabis, and cannabis products and materials, for serious medical conditions as recommended by a physician or nurse practitioner." Peterson also identified this as the NMCCA's primary purpose when he stated in his ballot title and explanatory statement that the NMCCA would "[p]rovide individuals the right to use, possess, access, purchase, and produce cannabis, cannabis products, and cannabis-related equipment for serious medical conditions if recommended by a

licensed physician or nurse practitioner, subject to certain exceptions and reasonable laws, rules, and regulations . . . ." (Emphasis omitted.)

These statements characterize the NMCCA's general subject accurately and at an adequate level of specificity to provide for meaningful review. A constitutional right to produce and medicinally use cannabis is not so broad as to evade the single subject rule as a constitutional check on voter ballot initiatives. Rather, it can be tested against other provisions without risk that every secondary purpose could reasonably be argued as naturally and necessarily connected to it.

Accordingly, we find the general subject of the NMCCA is to create a constitutional right for persons with serious medical conditions to produce and medicinally use cannabis, subject to a recommendation by a licensed physician or nurse practitioner.

### (c) Right to Grow and Sell Cannabis

As Evnen found, the NMCCA also states a secondary purpose. Subsections (3) and (4) state:

(3) The rights protected in subsections (1) and (2) of this section include the right to access or purchase cannabis, cannabis products, and cannabis-related equipment from private entities. Private entities and agents operating on the entities' behalf in the State of Nebraska may grow, cultivate, process, possess, transport, sell, test, or transfer possession of cannabis, cannabis products, and cannabis-related equipment for sale or delivery to an individual authorized to use cannabis under subsection (1) or (2) of this section.

(4) Individuals or entities engaged in actions allowed by, or exercising rights protected by this section shall not be subject to arrest, prosecution, or civil or criminal penalties under state or local law, except that reasonable

penalties may be imposed for any violation of reasonable laws, rules, and regulations enacted pursuant to subsection (5) of this section.

By this text, subsections (3) and (4) express a different primary purpose than subsections (1) and (2). Instead of affording certain persons a constitutional right to produce and medicinally use cannabis, subsection (3) would afford private entities in Nebraska a constitutional property right to legally grow and sell the substance to persons who qualify under subsections (1) and (2). And subsection (4) would civilly and criminally immunize any private entity engaging in actions allowed or protected by subsection (3).

Though he found the "difficulty" posed by subsections (3) and (4) under the single subject rule "substantial," Evnen decided the secondary purpose was sufficiently in support of the general subject to be naturally and necessarily connected. Similar to *Christensen*[36] and *City of Fremont v. Kotas*,[37] where the secondary purpose was upheld because it would significantly support the initiative's general subject, Evnen reasoned, the constitutional right to grow and sell cannabis here, too, was in support of the constitutional right to produce and medicinally use the substance. We disagree.

This case is distinguishable from both *Christensen* and *Kotas*. *Kotas* is distinguishable because it was decided under our common-law single subject rule. We have applied the common-law rule to municipal voter ballot initiatives since at least 1939.[38] Under that rule, we have stated that

a proposed municipal ballot measure is invalid if it would (1) compel voters to vote for or against distinct propositions in a single vote—when they might not do so if presented separately; (2) confuse voters on the issues they

---

[36] See *Christensen v. Gale, supra* note 6.

[37] See *City of Fremont v. Kotas, supra* note 22.

[38] See *Drummond v. City of Columbus*, 136 Neb. 87, 285 N.W. 109 (1939).

are asked to decide; or (3) create doubt as to what action they have authorized after the election.[39]

But the single subject rule as applied to voter ballot initiatives has a much shorter and simpler history. Voters adopted the single subject rule for voter ballot initiatives in 1998.[40] And they placed, in Neb. Const. art. III, § 2, only a seven-word requirement: "Initiative measures shall contain only one subject." Accordingly, this case is controlled by those seven words and not by the three-part test applied in *Kotas*.

We have only applied the single subject rule under Neb. Const. art. III, § 2, once before, in *Christensen*, but that case is factually distinguishable here.[41] In *Christensen*, the initiative's secondary purpose (maximizing federal funding for Medicaid) was naturally and necessarily connected to its general subject (expanding Medicaid coverage in the State). The nature of expanding Medicaid coverage was clearly connected to its funding source, and federal funding was necessary for the State to expand Medicaid coverage.[42] The similarity between these two purposes demonstrated a singleness of purpose and a lack of logrolling concerns.[43]

Although not explicitly stated in *Christensen*, an implied further reason that logrolling was not a concern was that it was the federal government, and not the initiative's sponsors, that tied federal funding to state programs of Medicaid expansion. This indicated that the secondary purpose was not one borne purely of tactical convenience—that is, to persuade voters "to vote for the primary purpose of expanding Medicaid in order to obtain, more generally, federal funds."[44]

---

[39] *City of North Platte v. Tilgner, supra* note 22, 282 Neb. at 349, 803 N.W.2d at 487.

[40] See 1997 Neb. Laws, L.R. 32CA, § 1.

[41] *Christensen v. Gale, supra* note 6.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 35, 917 N.W.2d at 158.

In contrast, here, the NMCCA's secondary purpose is not naturally and necessarily connected to its general subject. First, subsection (3) lacks any natural connection to subsections (1) and (2). While subsections (1) and (2) concern a personal constitutional right of patients with serious medical conditions to produce and use cannabis for themselves, subsection (3) concerns a constitutional right of private entities to grow and sell cannabis to others. This constitutional right to sell cannabis, and its accompanying expectation of profit, is a property right.

We have long distinguished between the nature of use and property rights in other contexts.[45] We have also distinguished between the nature of rights held by an individual and by a business or other legal entity.[46] The personal, individual rights that would be conferred by subsections (1) and (2) are fundamentally distinct from the property rights conferred by subsection (3). Meanwhile, subsection (4) would enforce those property rights by conferring civil and criminal immunity to persons exercising them. Accordingly, neither subsection (3) nor subsection (4) is naturally connected to the NMCCA's general subject.

[24] Second, the NMCCA's secondary purpose is not necessarily connected to its general subject. The term "necessary" means something "on which another thing is dependent or

---

[45] See, e.g., *Cappel v. State*, 298 Neb. 445, 456, 905 N.W.2d 38, 48 (2017) ("[t]he right to appropriate surface water is not an ownership of property"); *Strode v. City of Ashland*, 295 Neb. 44, 62-63, 886 N.W.2d 293, 307 (2016) (noting, in an inverse condemnation action, that "'"'"[t]he right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose . . . is a privilege [of owning property rights] protected by law'"'"").

[46] See, e.g., *State v. Stanko*, 304 Neb. 675, 685, 936 N.W.2d 353, 361 (2019) (business that "holds a portion of its property open to the public" impliedly gives right to others to enter it under a limited privilege). See, also, Neb. Rev. Stat. § 21-145 (Reissue 2012) (providing limited liability company right, which no individual has, to legally dissolve).

contingent."[47] In no sense is authorization in subsection (3) for private entities to grow and sell cannabis necessary for patients with serious medical conditions to use the substance medicinally. Subsections (1) and (2) provide for patients to obtain cannabis by producing it themselves or with the help of a caregiver. If patients could legally produce their own medicinal cannabis, their legal use of the substance would not depend or be contingent upon it being grown and sold by private entities. Subsections (3) and (4) would create a market to unnecessarily bolster the supply of medicinal cannabis, despite subsections (1) and (2) already providing an adequate means of meeting any demand. In this way, subsection (3) would go far beyond any necessary connection, and subsection (4) would broaden this already unnecessarily connected purpose still further by conferring any private entity acting under the color of constitutional right under subsection (3) with immunity from any civil or criminal liability, even arrest.

Suppose that a voter were in favor of there being in this state a constitutional right to produce and medicinally use cannabis, but not a constitutional right to grow and sell the substance; he or she could not express that preference with a vote for or against the NMCCA in November. Instead, in its first and second pairs of subsections, the NMCCA combines dissimilar propositions into one proposed amendment "so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted

---

[47] "Necessary," Oxford English Dictionary Online, http://oed.com/view/Entry/125629 (last visited Sept. 8, 2020). See, also, "Necessary," Merriam-Webster.com, http://www.merriam-webster.com/dictionary/necessary (last visited Sept. 8, 2020) ("absolutely needed" or "logically unavoidable"); "Necessary," Cambridge English Dictionary Online, http://dictionary.cambridge.org/us/dictionary/english/necessary (last visited Sept. 8, 2020) ("needed in order to achieve a particular result"); Black's Law Dictionary 1192 (10th ed. 2014) ("[t]hat is needed for some purpose or reason; essential").

separately."[48] This demonstrates precisely the logrolling scenario that Nebraska's voters sought to avoid by adopting the single subject rule in Neb. Const. art. III, § 2.

We hold that subsections (3) and (4) of the NMCCA exhibit an impermissible secondary purpose because they are not naturally and necessarily connected to subsections (1) and (2).

### (d) Limitations on Right to Produce and Medicinally Use Cannabis

At oral arguments, Wagner also maintained that some six other purposes of the NMCCA render it in violation of the single subject rule. Specifically, Wagner points to the following language in subsections (6), (7), and (8):

(6) This section shall not be construed to:

(a) Allow the smoking of cannabis in public;

(b) Require detention or correctional facilities to allow the possession or use of cannabis in such facilities;

(c) Allow the operation of a motor vehicle while impaired by cannabis; or

(d) Otherwise allow engaging in conduct that would be negligent to undertake while impaired by cannabis.

(7) This section does not require an employer to allow an employee to work while impaired by cannabis.

(8) This section does not require any insurance provider to provide insurance coverage for the use of cannabis.

We agree with Wagner that the clauses in these subsections represent distinct constitutional rights and policies not naturally and necessarily connected to the general subject of the NMCCA. The NMCCA's general subject bears no natural relation to the four objects expressed in subsection (6) that would amend, with respect to medicinal cannabis use, the law of public space, correctional facilities, motor vehicles, and negligence. Nor does the production and medicinal use of cannabis naturally relate to the objects in subsections (7) and (8) that would amend the law of employment decisions

---

[48] *Christensen v. Gale, supra* note 6, 301 Neb. at 31, 917 N.W.2d at 156.

and insurance coverage. These objects of limitation are not in any way necessary for a constitutional right to produce and medicinally use cannabis. There is nothing about the makeup or constitution of the production and medicinal use of cannabis that naturally relates to these objects, nor would the constitutional right of producing and medicinally using cannabis be dependent or contingent on its exclusion from certain locations or situations.

Rather, by our existing law, there is strong evidence that each of these objects of limitation needed to be included in separate voter ballot initiatives to amend the Nebraska Constitution. Nebraska's Constitution and statutes are separated by many of the objects of limitation the NMCCA would impose on existing law. For example, the use of public spaces, operation of motor vehicles, regulation of correctional facilities, and law of negligence are regulated by numerous other statutes.[49] The same is true of employment and insurance law.[50] That our laws have naturally separated these limitations provides strong evidence that they are their own general subjects and not naturally or necessarily connected to the production and medicinal use of cannabis. Indeed, a constitutional right to produce and medicinally use cannabis, if properly put to and approved by voters, would likely also result in the promulgation of new sections and chapters of laws regulating the production and medicinal use of cannabis.

But the issue with respect to subsections (6), (7), and (8) is the same as it is with respect to subsections (3) and (4). In voting on the NMCCA, a voter who approved or disapproved of a constitutional right to produce and medicinally use

---

[49] See, e.g., Neb. Rev. Stat. ch. 25, art. 21(o) (Reissue 2016) ("Certain Cases Involving Negligence"); Neb. Rev. Stat. ch. 37 (Reissue 2016) ("Game and Parks"); Neb. Rev. Stat. ch. 51 (Reissue 2010) ("Libraries and Museums"); Neb. Rev. Stat. ch. 60 (Reissue 2010) ("Motor Vehicles"); Neb. Rev. Stat. ch. 83, art. 4 (Reissue 2014) ("Penal and Correctional Institutions").

[50] See, e.g., Neb. Rev. Stat. ch. 44 (Reissue 2010) ("Insurance"); Neb. Rev. Stat. ch. 48 (Reissue 2010) ("Labor").

cannabis cannot express a contrary view as to the additional subjects presented in subsections (6), (7), and (8) on the law of public space, correctional facilities, motor vehicles, negligence, employment decisions, and insurance coverage. On its face, the NMCCA indicates that these subjects of constitutional amendment were included only for tactical convenience, not any natural and necessary connection. This is again an example of logrolling.

We hold that subsections (6), (7), and (8) of the NMCCA also exhibit an impermissible secondary purpose because they are not naturally and necessarily connected to subsections (1) and (2).

### 3. Writ of Mandamus

Based on the legal insufficiency of the NMCCA, Wagner prays for this court to issue two forms of relief: first, a declaratory judgment finding that the NMCCA is legally insufficient, and second, a writ of mandamus requiring Evnen to withhold it from the November 2020 general election ballot.

[25,26] The function of declaratory relief is to determine a justiciable controversy that is either not yet ripe by conventional remedy or, for other reasons, is not conveniently amenable to usual remedies.[51] Thus, although declaratory judgment actions are permitted by statute in certain circumstances under the Uniform Declaratory Judgments Act,[52] we have held that a declaratory judgment will generally not lie where another equally serviceable remedy is available.[53] An application for a writ of mandamus is another such equally serviceable remedy.[54]

[27] Under this rule, then, Wagner cannot have relief in the form of both a declaratory judgment and a writ of mandamus.

---

[51] *Cain v. Lymber*, 306 Neb. 820, ___ N.W.2d ___ (2020).

[52] Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016).

[53] *Cain v. Lymber, supra* note 51.

[54] See *id.*

If a writ of mandamus would be adequate and equally service-able, then a declaratory judgment will not lie.

[28] Mandamus relief is available if Wagner can show (1) that there exists a clear right to the relief sought, (2) that Evnen has a corresponding clear duty to perform the act requested, and (3) that no other plain and adequate remedy is available in the ordinary course of law.[55]

[29] Here, because Wagner's legal insufficiency argument has merit, his prayer for a writ of mandamus also has merit. Nebraska law imposes on the Secretary of State a nondiscretionary duty to determine the legal sufficiency of ballot measures and withhold any legally insufficient measure from the ballot.[56] Noting that this was "a close case," Evnen wrongly determined to certify the NMCCA, a legally insufficient voter ballot initiative, for the November 2020 general election ballot. Thus, Wagner's right is clear and mandamus relief is his only adequate remedy. Accordingly, we deny Wagner's prayer for a declaratory judgment, but grant his prayer for a writ of mandamus.

## VI. CONCLUSION

[30,31] The single subject rule was adopted by voters to protect against voter ballot initiatives that failed to give voters an option to clearly express their policy preference.[57] "Just as we must 'respect and . . . give effect to the power the people have reserved to themselves' to amend the constitution . . . through initiative measures, we are obliged to give meaningful effect to their 'self-imposed limitations' on that power . . . ."[58] Here, that means giving meaningful effect to the single subject rule in Neb. Const. art. III, § 2.

---

[55] See *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994).

[56] See *id.*

[57] See *State ex rel. Loontjer v. Gale, supra* note 10.

[58] *State ex rel. Lemon v. Gale, supra* note 14, 272 Neb. at 304, 721 N.W.2d at 356.

As proposed, the NMCCA contains more than one subject—by our count, it contains at least eight subjects. In addition to enshrining in our constitution a right of certain persons to produce and medicinally use cannabis under subsections (1) and (2), in subsections (3) and (4), the NMCCA would enshrine a right and immunity for entities to grow and sell cannabis; and in subsections (6), (7), and (8), it would regulate the role of cannabis in at least six areas of public life. These secondary purposes are not naturally and necessarily connected to the NMCCA's primary purpose. As such, they constitute logrolling.

If voters are to intelligently adopt a State policy with regard to medicinal cannabis use, they must first be allowed to decide that issue alone, unencumbered by other subjects.

The decision of the Secretary of State is reversed. We issue a writ of mandamus directing him to withhold the NMCCA from the November 2020 general election ballot.

WRIT OF MANDAMUS GRANTED.

PAPIK, J., dissenting.

I respectfully dissent from the opinion of the court to the extent it concludes that the Nebraska Medical Cannabis Constitutional Amendment (NMCCA) should not be placed on the ballot and voted upon by the people. I agree with the Secretary of State that the NMCCA does not violate the single subject requirement of Neb. Const. art. III, § 2.

Under Neb. Const. art. III, § 2, "[t]he first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature." We have long recognized that "[t]he right of initiative is precious to the people and one which courts are zealous to preserve to the fullest tenable measure of spirit as well as letter." *Christensen v. Gale*, 301 Neb. 19, 27, 917 N.W.2d 145, 153 (2018). See, also, *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999). We have also said that the power of initiative must be liberally construed to promote the democratic process and

that provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual. *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006).

The people's power to amend the constitution or enact legislation through initiative is not unlimited. The single subject rule at issue in this case is one such limitation. The single subject requirement arises out of the following seven words in art. III, § 2: "Initiative measures shall contain only one subject." As the majority opinion describes, we have traditionally followed what we have dubbed the natural and necessary connection test for determining whether a ballot initiative violates the single subject rule. See *Christensen, supra*. Under that test, "'"[w]here the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition."'" *Id.* at 32, 917 N.W.2d at 156 (quoting *State ex rel. Loontjer v. Gale*, 288 Neb. 973, 853 N.W.2d 494 (2014)). See, also, *Munch v. Tusa*, 140 Neb. 457, 300 N.W. 385 (1941). The controlling factors in this inquiry are the initiative's singleness of purpose and the relationship of the details to its general subject. *Christensen, supra*. An initiative's general subject is defined by its primary purpose. *Id.*

Under the foregoing test, the first step in any single subject rule inquiry is to determine the general subject or primary purpose of the initiative measure. And, as it turns out, everyone involved in this case—the initiative's sponsors, the relator, the Secretary, and the majority of this court—more or less agrees as to the NMCCA's primary purpose. As the majority puts it, the NMCCA's purpose is "to create a constitutional right for persons with serious medical conditions to produce and medicinally use cannabis, subject to a recommendation by a licensed physician or nurse practitioner." I agree that is a fair statement of the NMCCA's primary purpose.

With the general subject or primary purpose of the NMCCA established, the question is whether the various provisions

thereof have a natural and necessary connection to that primary purpose. It is on this question that I part company with the majority. For reasons I will explain, I find that when the natural and necessary connection test is applied to the NMCCA in the manner in which we have done so in previous cases, no single subject rule violation emerges. All the details of the NMCCA relate to the same general subject—providing a right to individuals with serious medical conditions to use cannabis to alleviate those conditions.

*Right to Produce Cannabis and Sell*
*It to Those Given Right to Use.*

The majority finds that the NMCCA first violates the single subject rule by providing private entities a right to produce cannabis for and sell cannabis to those authorized to use cannabis to alleviate a serious medical condition, as well as conferring certain legal immunities on those private entities when they do so. I disagree that this right to produce and sell cannabis to those authorized to use it and related immunities constitute additional subjects under the natural and necessary relationship test. Instead, I agree with the analysis of the Secretary on this point.

The Secretary found there was a natural and necessary connection between the legalized production and sale of medical cannabis and the primary purpose of the NMCCA—individual use of cannabis by those with serious medical conditions. As he explained, "[i]t is inherent in the legalization of medical cannabis that someone or some category of persons must be granted the right or authority to produce, sell and distribute the medical cannabis." I agree with this assessment. A right of individuals to use cannabis for medicinal purposes is meaningful only if individuals can access cannabis. Some means of access is naturally and necessarily related to use. The NMCCA proposes to provide that access through both allowing individuals to grow their own cannabis and allowing production and sale by third parties.

The majority finds otherwise, reasoning that the right to sell cannabis is a property right and that individuals given the right to use cannabis could access it by means other than allowing third parties to produce and sell it. I am not convinced. First, it is not clear to me what property right has been created or bestowed by giving unspecified entities the right to produce and sell cannabis to authorized users, but, in any event, I also do not see what relevance that has to the natural and necessary connection test.

As for the notion that there is a single subject problem because authorized users could get access to cannabis in some other way, that runs counter to our precedent applying the natural and necessary connection test. Last election cycle in *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018), we rejected an argument that an initiative measure to expand Medicaid in Nebraska violated the single subject rule because it could have been proposed without also proposing that federal funding be maximized. We said that the single subject inquiry was not whether the measure could have been proposed without federal funding or "the *strict necessity* of any given detail to carry out the general subject," but, rather, the controlling consideration was the measure's "singleness of purpose and relationship of the details to the general subject." *Id.* at 34, 917 N.W.2d at 157 (emphasis supplied).

Neither did we inquire in *City of Fremont v. Kotas*, 279 Neb. 720, 781 N.W.2d 456 (2010), whether each of the individual elements of a proposed municipal ordinance to regulate illegal immigration were indispensable to achieve the measure's general purpose. There, we concluded that a proposed ordinance imposing different requirements on a variety of different entities—landlords, tenants, the city police department, and local businesses—constituted a single subject because the various components "had a natural and necessary connection with each other and were part of the general subject of regulating illegal aliens" in the city. *Id.* at 728, 781 N.W.2d at 463. The majority suggests that *Kotas* has no bearing on this case because

municipal initiatives are not governed by the art. III, § 2, single subject rule, but *Kotas* is not so easily cast to the side. Although *Kotas* did involve a municipal initiative, we cited and applied the same natural and necessary connection test that governs here. In fact, this court subsequently abrogated *Kotas* precisely *for applying a state constitutional provision* to a municipal ordinance. See *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011). Furthermore, we relied on the reasoning of *Kotas* in *Christensen*, which involved the single subject rule at hand here.

Not only is the majority's application of the natural and necessary test in tension with our prior cases, it is difficult to see how it would ever allow an initiative measure to include the means by which an initiative measure seeks to accomplish its general purpose. In almost any case, a challenger will be able to point to *some* alternative way in which the general purpose could be pursued and thereby argue that the means proposed by the initiative's sponsors are not "necessary" and thus introduce a prohibited second subject. And yet our articulation of the natural and necessary connection test expressly contemplates that a measure may contain both a primary purpose and the details by which that purpose will be achieved. See, e.g., *Christensen, supra*.

So what work does the word "necessary" do in the natural and necessary connection test? I read *Christensen* to say that rather than asking whether a particular detail is strictly necessary or whether other details could have been provided, we are to ask whether the *purpose* of the included details are naturally and necessarily connected to the general purpose. In *Christensen*, the provision regarding maximizing federal funding passed the natural and necessary connection test because funding of some kind is a natural and necessary part of the expansion of a government program. In a similar way, as the Secretary reasoned here, providing individuals authorized to use cannabis medicinally a means of access is a natural and necessary part of granting a right to use.

Finally, I disagree with the majority's assertion that the NMCCA's inclusion of both a right to use cannabis medicinally and a right of others to produce and sell it to authorized users is a single subject violation because it amounts to logrolling. We have said that the prevention of logrolling is a purpose of the single subject rule, but we have defined logrolling as "the practice of combining *dissimilar propositions* into one proposed amendment so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted separately." *State ex rel. Loontjer v. Gale*, 288 Neb. 973, 995, 853 N.W.2d 494, 510 (2014) (emphasis supplied). Logrolling is not a separate test apart from our familiar natural and necessary inquiry; and if the features are naturally and necessarily related, it is not appropriate to examine the proposal for logrolling. Because I believe the provisions at issue are related, rather than dissimilar, logrolling has no application here.

*Limitations on Rights Conferred.*

I also disagree with the majority's conclusion that the limitations contained within subsections (6), (7), and (8) of the NMCCA are not naturally and necessarily connected to the general subject. According to the majority, these limitations on the scope of the amendment represent "distinct constitutional rights and policies" that would change the existing law of public space, motor vehicles, correctional facilities, negligence, employment, and insurance coverage. However, rather than introducing a second subject, the limitations define the rights conferred by the NMCCA by stating what the amendment does not require. They make clear that the areas of law identified by the majority would, in fact, not change if the NMCCA were to become law. These provisions bear a natural and necessary connection to giving individuals a constitutional right to use medical cannabis because they define the parameters of that right.

In analyzing these limitations, the majority finds more logrolling. Again, I do not believe this fits our definition of

logrolling because the rights granted and the exceptions to those rights are related, rather than dissimilar. In addition, while presenting the provisions together is not logrolling, the alternative of requiring these related provisions to be presented separately could result in other problems for voters. There are some measures containing multiple, related policy details where voters' support for one policy detail might depend on whether another detail becomes law. Suppose, for example, that citizens of a municipality that has previously banned dog ownership propose an initiative to allow for dog ownership with the exception of pit bulls. If the general authorization of dog ownership and the pit bull exception must be presented separately, a voter favorably inclined to dogs generally but opposed to pit bulls cannot reliably express his or her preferences.

Similarly, here, there may be voters whose support for legalizing medical cannabis depends on whether the right will be limited as in the NMCCA. Requiring the limitations to be submitted as separate ballot propositions will not prevent logrolling; it would only prevent those voters from being able to cast an informed vote.

*Conclusion.*

Courts and commentators have observed that the term "subject" as used in a single subject rule and any verbal tests that attempt to define it are malleable. See, e.g., *Advisory Opinion to the Atty. Gen.*, 592 So. 2d 225 (Fla. 1991) (Kogan, J., concurring in part, and in part dissenting); *Oregon Educ. Ass'n v. Phillips*, 302 Or. 87, 727 P.2d 602 (1986) (Linde, J., concurring); Robert D. Cooter & Michael D. Gilbert, *A Theory of Direct Democracy and the Single Subject Rule*, 110 Colum. L. Rev. 687 (2010). This presents courts with a challenge. As one court described the quandary, if the rule is applied too loosely, it "would render the safeguards of [a single subject rule] inert. Conversely, the requirements of [a single subject rule] must not become a license for the judiciary to 'exercise a pedantic tyranny'" over efforts to change the law. *PA Against Gambling Expansion Fund v. Com.*, 583 Pa. 275, 296, 877 A.2d 383,

395-96 (2005) (quoting *City of Philadelphia v. Com.*, 575 Pa. 542, 838 A.2d 566 (2003)). To be clear, I do not believe anyone on this court wishes to exercise a tyranny of any kind over the initiative process. But, for the reasons I have discussed, I am concerned that today's decision has squeezed the concept of single subject in art. III, § 2, such that the people's right to initiative has been diminished.

Obviously, nothing I have said should be taken as commentary on the policy merits of legalizing cannabis for medicinal use or whether the NMCCA is a sound means of doing so. It would not be consistent with the role of the judiciary to express a view on such matters. See *State ex rel. Johnson v. Gale*, 273 Neb. 889, 896, 734 N.W.2d 290, 298 (2007) ("[t]his court makes no attempt to judge the wisdom or the desirability of enacting initiative amendments"). When legally sufficient, however, it is the right of the people to express their views on initiative measures by voting. Because I believe the Secretary correctly rejected the relator's arguments that the NMCCA was legally insufficient, I would not keep it from the ballot.

MILLER-LERMAN, J., joins in this dissent.