Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/26/2024 09:06 AM CDT

- 217 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

Planned Parenthood of the Heartland, Inc.,
and Sarah Traxler, M.D., appellants, v.
Mike Hilgers, in his official capacity
as Attorney General for the State
of Nebraska, et al., appellees.

___ N.W.3d ___

Filed July 26, 2024.    No. S-23-644.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews a grant of summary judgment de novo, viewing the record in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
2. **Constitutional Law: Statutes: Appeal and Error.** A statute's constitutionality is a legal question reviewed de novo.
3. **Trial: Evidence: Hearsay: Appeal and Error.** An appellate court generally reviews the district court's determination of relevancy and admissibility of evidence for an abuse of discretion. However, it reviews de novo a court's exclusion of evidence as hearsay.
4. **Constitutional Law: Courts: Legislature: Statutes.** The construction and interpretation of the Nebraska Constitution is a judicial function, and it is the duty of the judicial branch to determine whether an act of the Legislature contravenes the provisions of the Nebraska Constitution, including the authority to determine what effect, if any, an unconstitutional statute shall have upon the rights of parties that may have been affected by it.

Appeal from the District Court for Lancaster County, Lori A. Maret, Judge. Affirmed.

Matthew R. Segal and Julie A. Murray, of American Civil Liberties Union Foundation, Inc., Vince Powers, of Powers Law, Rose Godinez, Mindy Rush Chipman, Scout Richters,

- 218 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

and Jane Seu, of American Civil Liberties Union of Nebraska, for appellants.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, Solicitor General, Lincoln J. Korell, and Zachary B. Pohlman for appellees.

Megan Mikolajczyk, of Nebraska Civic Engagement Table, Anthony Schutz, of University of Nebraska-Lincoln College of Law, Robert McEwen, and Kenneth Smith for amicus curiae Nebraska Appleseed Center for Law in the Public Interest.

Robert F. Bartle, of Bartle & Geier, Beth Neitzel, and Amanda S. Coleman, of Foley Hoag, L.L.P., for amicus curiae League of Women Voters of Nebraska.

Matthew F. Heffron and Michael G. McHale for amicus curiae Thomas More Society.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

This appeal presents a very narrow constitutional question: whether a bill enacted by the Legislature and signed by the Governor violates the single subject requirement of Neb. Const. art. III, § 14. Planned Parenthood of the Heartland, Inc., and its medical director, Sarah Traxler, M.D. (collectively Planned Parenthood), sought a finding that 2023 Neb. Laws, L.B. 574, violated the single subject rule and thus was unconstitutional. The lower court concluded there was no single subject violation, and Planned Parenthood appeals. Nebraska Attorney General Mike Hilgers cross-appeals, arguing that this single subject challenge is nonjusticiable. We find no merit to the cross-appeal and affirm the judgment of the lower court.

## II. BACKGROUND

This litigation involves the issue of whether L.B. 574 encompasses a single subject as required by Neb. Const. art. III, § 14. L.B. 574 was named the "Let Them Grow Act,"[1] and its stated purpose, as introduced in January 2023, was to "prohibit the performance of gender altering procedures for individuals under the age of 9, provide for [the] definition of terminology[,] and allow for civil action[s] to be brought against violators of the act."[2] The title of L.B. 574 stated that it was "relate[d] to public health and welfare." Planned Parenthood refers to such procedures as "gender-affirming care." Without disparaging that preference, we employ the statutory language.

As introduced, L.B. 574 restricted gender-altering care for minors, including procedures like voice surgery and the reduction of thyroid cartilage, as well as nonsurgical interventions like puberty-blocking drugs. It authorized any minor patient, or their parent or guardian, to sue a "health care practitioner" for providing such care.

During that same session, the Nebraska Legislature was considering 2023 Neb. Laws, L.B. 626, which was entitled the "Nebraska Heartbeat Act." L.B. 626 limited abortion upon the detection of a fetal heartbeat, or after approximately 6 weeks of pregnancy, with limited exceptions. The title of L.B. 626 indicated that the bill was "relate[d] to abortion." As of April 27, 2023, L.B. 626 failed to garner enough votes to end a filibuster and invoke cloture, and its progress through the Legislature stalled.

Unlike L.B. 626, L.B. 574 received enough votes to survive a filibuster and advance. In May 2023, an amendment to L.B. 574 was proposed. The amendment was entitled the

---

[1] See Neb. Rev. Stat. §§ 71-7301 to 71-7307 (Supp. 2023).

[2] Introducer's Statement of Intent, L.B. 574, Health and Human Services Committee, 108th Leg., 1st Sess. (Feb. 8, 2023).

- 220 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

"Preborn Child Protection Act"[3] and proposed to limit abortion after 12 weeks of pregnancy. As with L.B. 626, the limitation on abortion services was subject to the same exceptions and provided enforcement through the revocation of medical licenses and civil fines of up to $20,000 per abortion. The title of L.B. 574, as amended, read:

> A BILL FOR AN ACT relating to public health and welfare; to amend sections 38-192, 38-193, and 38-196, Reissue Revised Statutes of Nebraska, and sections 38-178, 38-179, 38-2021, and 38-2894, Revised Statutes Cumulative Supplement, 2022; to adopt the Preborn Child Protection Act and the Let Them Grow Act; to provide for discipline under the Uniform Credentialing Act; to harmonize provisions; to provide operative dates; to provide severability; to repeal the original sections; and to declare an emergency.

During debate, a challenge was made to the amendment on germaneness grounds. Rule 7 of the Rules of the 108th Nebraska Unicameral Legislature requires that amendments must "relate only to details of the specific subject of the bill and must be in a natural and logical sequence to the subject matter of the original proposal." The chair of the Legislature ruled the amendment was germane. A later motion to overrule that decision was made and debated. By a 34-14 margin, the legislative body voted that the Preborn Child Protection Act amendment was germane to the Let Them Grow Act.

In addition to germaneness, legislative debate was held on whether L.B. 574, as amended, would violate the single subject requirement of article III, § 14. Following debate on this issue, the Legislature concluded that the bill contained only a single subject, satisfying the article III, § 14 requirement. The Legislature adopted the amendment on May 16, 2023; L.B. 574 was passed 3 days later and signed by the Governor. The abortion limitations took effect immediately in May 2023,

---

[3] See Neb. Rev. Stat. §§ 71-6912 to 71-6917 (Supp. 2023).

- 221 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

while the limitations on gender-altering care became operative, along with emergency regulations from the Department of Health and Human Services' chief medical officer, on October 1.

Planned Parenthood is a nonprofit organization with health centers in Omaha and Lincoln, Nebraska, that provide a wide range of services, including abortion. Traxler is Planned Parenthood's medical director and a board-certified obstetrician and gynecologist licensed to practice in several states, including Nebraska. Traxler both oversees all medical and abortion services in Nebraska and provides some medical services, including abortion, in Nebraska. Prior to the effective date of L.B. 574, Planned Parenthood provided abortion services in Nebraska through 16 weeks 6 days of pregnancy; roughly one-third of those abortions occurred after 12 weeks of pregnancy.

Planned Parenthood filed suit in May 2023. Hilgers moved to dismiss for failure to state a claim; that motion was converted to one for summary judgment, and Planned Parenthood subsequently also moved for summary judgment. The district court found that Traxler lacked standing, the single subject challenges were justiciable, and L.B. 574 did not violate article III, § 14.

## III. ASSIGNMENTS OF ERROR

Planned Parenthood assigns, renumbered, that the district court (1) erred in finding that Traxler lacks standing; (2) abused its discretion in excluding exhibit 1, paragraphs 21 to 23, 29 to 35, 38 to 44, 49, 50, 52, 54 to 59, 62, and 66, as well as exhibit 2's incorporation of these excluded paragraphs; (3) erred in excluding on relevance grounds legislative documents in exhibits 17 to 24 and 29 to 35 and by constructively denying Planned Parenthood's request to take judicial notice of those documents; (4) erred by excluding on the basis of hearsay the admissions of the Governor, a party-opponent, upon his signing of L.B. 574; and (5) erred in finding that

- 222 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

L.B. 574 did not violate the single subject requirement of article III, § 14.

Hilgers assigns on cross-appeal that legislative single subject challenges under article III, § 14, are nonjusticiable political questions.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews a grant of summary judgment de novo, viewing the record in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[4]

[2] A statute's constitutionality is a legal question reviewed de novo.[5]

[3] An appellate court generally reviews the district court's determination of "relevancy and admissibility of evidence" for an abuse of discretion.[6] However, it reviews de novo a court's exclusion of evidence as hearsay.[7]

## V. ANALYSIS

### 1. Justiciability

We turn first to Hilgers' cross-appeal in which he makes several arguments, all suggesting that the issues presented here are nonjusticiable political questions. We find no merit to his arguments.

We have previously explained the importance of the single subject requirement of the constitution:

> Our constitutional provision that "no bill shall contain more than one subject, which shall be clearly expressed in its title," is but making inviolable the rule governing

---

[4] *Griffith v. LG Chem America*, 315 Neb. 892, 1 N.W.3d 899 (2014).

[5] See *Lingenfelter v. Lower Elkhorn NRD*, 294 Neb. 46, 881 N.W.2d 892 (2016).

[6] *Elbert v. Young*, 312 Neb. 58, 62, 977 N.W.2d 893, 898 (2022).

[7] See *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

- 223 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

legislative bodies, that "no proposition or subject different from that under consideration shall be admitted under color of amendment." Experience has shown that in the absence of constitutional restrictions, the rule at times is liable to be overthrown, and objectionable and pernicious legislation is the result. To guard against this evil, our constitution prohibits more than one subject being embraced in a bill. And while this provision has sometimes been attended with inconvenience, as in [the] case of a revision of the laws, it is a safeguard against corrupt or improvident legislation, and its effect has been to simplify legislation and place every bill upon its true merits. But if, under the pretext of amending a section, a subject entirely foreign to the subject matter of the section to be amended can be introduced, this barrier will be entirely broken down and the constitutional guaranty in effect destroyed.[8]

In *Van Horn v. State*,[9] we noted the importance of the Constitution as the supreme law, the effect of that status, and the duties of the respective parts of government to the Constitution:

We had thought it settled, at least since the decision of *Marbury v. Madison*, . . . that the constitution is the supreme law, binding upon the legislature, as well as upon every citizen, and that no act of the legislature repugnant to the constitution can become a law for any purpose. A different doctrine has of late been revived, and it would even seem has received acceptance in a much modified form by some courts. There can, however, in our mind, be no escape from these propositions, that the constitution is the fundamental law, that an act

---

[8] *Miller v. Hurford*, 11 Neb. 377, 381, 9 N.W. 477, 479 (1881) (emphasis omitted).

[9] *Van Horn v. State*, 46 Neb. 62, 82-83, 64 N.W. 365, 372 (1895).

- 224 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

of the legislature repugnant thereto is not merely void-able by the courts, but is absolutely void and of no effect whatever. It is no law, and binds no one to observe it. The officers of this state are sworn to support the constitution. Where a supposed act of the legislature and the constitution conflict, the constitution must be obeyed and the statute disregarded.

[4] Accordingly, and for well over a century, this court has made just such determinations, noting in *Jaksha v. State*[10]:

"It is a settled principle of constitutional law that the construction and interpretation of the Constitution is a judicial function and it is the duty of the judicial branch of our government to determine whether an act of the Legislature contravenes the provisions of the Constitution. [Citation omitted.] This power and duty necessarily include the authority to determine what effect if any an unconstitutional statute shall have upon the rights of parties which may have been affected by it."

We find unpersuasive Hilgers' arguments on appeal. First, Hilgers misapprehends what it is this court is reviewing. We are, in fact, reviewing the "law" as was purportedly passed by the Legislature. Yet, if that law—admittedly a bill before it was ostensibly enacted by the Legislature—contains more than one subject, that legislative act is void.[11] And this court has the inherent authority to review legislative acts to ensure that such acts comply with the Constitution.[12] In other words, a bill that contains more than one subject, but is nevertheless passed into law by the Legislature, is void and is of no effect. It is this court's responsibility, no matter how delicate the task, to make that determination.

---

[10] *Jaksha v. State*, 241 Neb. 106, 133, 486 N.W.2d 858, 875 (1992) (quoting *Davis v. General Motors Acceptance Corp.*, 176 Neb. 865, 127 N.W.2d 907 (1964)).

[11] See Neb. Const. art. V, § 2.

[12] *Jaksha v. State, supra* note 10.

- 225 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

Hilgers' other arguments, including his reliance on *Nebraska Coalition for Ed. Equity v. Heineman*,[13] are without merit. In *Nebraska Coalition for Ed. Equity*, an advocacy group sought a declaratory judgment that the Legislature's school funding system violated the Nebraska Constitution. We declined to address the issues presented on appeal, noting that the Constitution placed the provision of free instruction with the Legislature, and did not provide standards for courts to determine the level of education that must be provided, and that we "could not make that determination without deciding matters of educational policy in disregard of the policy and fiscal choices that the Legislature already made."[14]

*Nebraska Coalition for Ed. Equity* is distinguishable from the single subject requirement presented here. A single subject requirement is not a substantive determination, but, rather, it is a procedural one, which requires no determination by this court of the underlying policy issue presented by the bill being challenged. "It is the province of [the Constitution] to establish those fundamental maxims, and fix those unvarying rules, by which all departments of the government must at all times shape their conduct . . . ."[15] We are not asked here to opine on the choices made by the Legislature in pursuing the path it has; we are only asked to answer whether the bill, as enacted, contains a single subject. This is a constitutional question, not a political one, and as we have noted, it is one vested with the judiciary.

Nor does our decision in *Nebraska Coalition for Ed. Equity* reverse our jurisprudence. As noted above and going back over a hundred years, we have consistently held that a single

---

[13] *Nebraska Coalition for Ed. Equity v. Heineman*, 273 Neb. 531, 731 N.W.2d 164 (2007).

[14] *Id.* at 557, 731 N.W.2d at 183.

[15] Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union 78-79 (1868).

- 226 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

subject inquiry was justiciable by this court. We find no merit to Hilgers' cross-appeal.

## 2. Standing

We turn next to Planned Parenthood's first assignment of error—that the district court erred in finding that Traxel lacked standing to bring this action for declaratory judgment because she did not sufficiently allege how she would be injured by L.B. 574. We conclude that we need not address whether Traxel has standing because, in any case, Planned Parenthood has standing, which necessitates that we reach the single subject requirement raised by this appeal. We do not address this assignment of error further.

Planned Parenthood also makes several arguments relating to the admission of certain portions of Traxler's affidavit regarding barriers to abortion, as well as exhibits from publications of the Nebraska Legislature and other newspapers relating to the legislative progress of L.B. 574 and L.B. 626. Planned Parenthood also seeks to admit public statements made by the Governor at the time of the signing of L.B. 574. We likewise need not address those issues here as they are not necessary to resolve the legal question presented by this appeal.

## 3. Single Subject

We now turn to the primary issue in this appeal—whether L.B. 574 violates the single subject requirement of article III, § 14, which requires in relevant part: "*No bill shall contain more than one subject, and the subject shall be clearly expressed in the title.*" (Emphasis supplied.)

Single subject challenges are rare, and single subject violations even rarer.[16] In considering such a challenge, we are guided by our respect for the Legislature as our coequal branch of government, as well as its role in setting policy for our state.

---

[16] See, e.g., Richard Briffault, *The Single-Subject Rule: A State Constitutional Dilemma*, 82 Alb. L. Rev. 1629 (2018-19).

- 227 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

[W]hen courts are called upon to pronounce the invalid-
ity of an act of legislation, passed with all the forms
and ceremonies requisite to give it the force of law, they
will approach the question with great caution, examine
it in every possible aspect, and ponder upon it as long
as deliberation and patient attention can throw any new
light upon the subject, and never declare a statute void,
unless the nullity and invalidity of the act are placed, in
their judgment, beyond reasonable doubt.[17]

"'The question whether a law be void for its repugnancy to
the constitution is at all times a question of much delicacy,
which ought seldom, if ever, to be decided in the affirma-
tive in a doubtful case.'"[18] "'The opposition between the
constitution and the law should be such that the judge feels
a clear and strong conviction of their incompatibility with
each other.'"[19]

This court has noted, in reference to article III, § 14, that

[t]his provision of the constitution has usually been held
to be mandatory; but it has also received a most liberal
construction. Indeed, there has been a general disposi-
tion to so construe it, rather than to embarrass legislation
by a construction whose strictness is unnecessary to the
accomplishment of the beneficial purposes for which it
has been adopted.[20]

In accordance with these principles, this court has long held
that "there should be a broad construction [on] constitutional
restriction[s] that would not defeat the reasonable intent of
the Legislature."[21] "[I]t [is] the settled doctrine that courts

---

[17] Cooley, *supra* note 15 at 182.

[18] *Id.*

[19] *Id*. at 183.

[20] *Nebraska Central Building & Loan Ass'n v. Board of Equalization*, 78
Neb. 472, 473-74, 111 N.W. 147, 148 (1907).

[21] *State v. Barton*, 91 Neb. 357, 371, 136 N.W. 22, 27 (1912).

- 228 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

will not declare an act of the Legislature unconstitutional unless it is manifestly so."[22]

(a) Article III, § 2, and Article XVI, § 1

In arguments before the trial court and again before this court, the parties cite to case law relevant to article III, § 2, which states, "whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature." That section provides that the voter ballot initiative is "[t]he first power reserved by the people." Article III, § 2, further provides: "The constitutional limitations as to the scope and subject matter of statutes enacted by the Legislature shall apply to those enacted by the initiative. Initiative measures shall contain only one subject." Though the parties rely on some of this case law under article III, § 2, we find it inapplicable in the instance where our analysis is centered on the single subject language directed at the Legislature as it is in article III, § 14. But because it is relied upon by the parties, we set forth the underlying case law on the topic to clarify certain differences between the review applied to each.

The requirement in article III, § 2, that initiative measures contain "only one subject" was added in 1998[23] in response to a Nebraska Attorney General's opinion that suggested voter-proposed constitutional amendments, as opposed to statutory enactments proposed through voters in the initiative process, were not limited to a single subject.[24] Of course, this is of more recent adoption than the single subject requirement for

---

[22] *Tukey v. Douglas County*, 129 Neb. 353, 363, 261 N.W. 833, 838 (1935) (Paine, J., dissenting).

[23] See, 1997 Neb. Laws, L.R. 32CA, § 1; *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018). See, also, Neb. Const. art. III, § 1A (1912) (adopted 1912, 1911 Neb. Laws, ch. 223, § 2, p. 671).

[24] Government, Military and Veterans Affairs Committee Hearing, L.R. 278, 94th Leg., 2d Sess. 65-67 (Jan. 25, 1996).

- 229 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

legislative enactments included in the Nebraska Constitution at its initial adoption in 1875.[25]

When considering the single subject rule for voter ballot initiatives concerning constitutional amendments, we follow the natural and necessary connection test: "[W]here the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition."[26] We have explained: "The controlling factors in this inquiry are the initiative's singleness of purpose and the relationship of other details to its general subject. An initiative's general subject is defined by its primary purpose."[27]

We have noted that in the instance of a constitutional amendment brought by the voters by petition, as opposed to the legislative process, the provision must be naturally and necessarily connected to a measure's primary purpose or general subject because the focus is on the requirement, set forth in article XVI, § 1, that mandates a separate presentation of the various provisions to the voters.[28] As a practical matter this test, when applied, tends to be stricter than the test utilized in assessing whether a legislative enactment comports with article III, § 14: "A legislative act may be amended or repealed at any succeeding session of the Legislature. A constitutional provision is intended to be a much more fixed and permanent thing."[29]

---

[25] See Neb. Const. art. III, § 11 (1875). See, also, Neb. Const. art. III, § 19 (1866).

[26] *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 151, 948 N.W.2d 244, 253 (2020) (internal quotation marks omitted) (quoting *State ex rel. Loontjer v. Gale*, 288 Neb. 973, 853 N.W.2d 494 (2014)). See *Munch v. Tusa*, 140 Neb. 457, 300 N.W. 385 (1941).

[27] *State ex rel. Wagner v. Evnen, supra* note 26, 307 Neb. at 151, 948 N.W.2d at 253.

[28] See *State ex rel. Loontjer v. Gale, supra* note 26 (citing *In re Senate File No. 31*, 25 Neb. 864, 41 N.W. 981 (1889)). See, also, Neb. Const. art. XVI, § 1.

[29] *State ex rel. Loontjer v. Gale, supra* note 26.

### (b) Article III, § 14

With that background in mind, we turn to article III, § 14, which provides in part: "No bill shall contain more than one subject, and the subject shall be clearly expressed in the title. No law shall be amended unless the new act contains the section or sections as amended and the section or sections so amended shall be repealed."

Our case law, as it relates to article III, § 14, is generally understood to comprise three main topics: (1) whether the title reflects the contents of the bill[30]; (2) whether the title adequately reflects that existing law is being revised or amended by the new legislation[31]; and (3) whether the bill comprises a single subject and meets the requirements of article III, § 14.[32]

[5] Article III, § 14, contains a titling requirement. In this case, in order to best highlight the issues actually presented by this appeal, we begin by observing that there is no challenge to the title of L.B. 574. Moreover, to the extent that L.B. 574 operates to amend an existing statute, there is no dispute that the title adequately notes these amendments.

The title of L.B. 574 states:

A BILL FOR AN ACT relating to public health and welfare; to amend sections 38-192, 38-193, and 38-196, Reissue Revised Statutes of Nebraska, and sections 38-178, 38-179, 38-2021, and 38-2894, Revised Statutes Cumulative Supplement, 2022; to adopt the Preborn Child Protection Act and the Let Them Grow Act; to provide for discipline under the Uniform Credentialing

---

[30] See, e.g., *Trumble v. Trumble*, 37 Neb. 340, 55 N.W. 869 (1893); *The State, ex rel. Jones v. Lancaster County*, 6 Neb. 474 (1877); *City of Tecumseh v. Phillips*, 5 Neb. 305 (1877).

[31] See, e.g., *Trumble v. Trumble, supra* note 30; *Ballou v. Black*, 17 Neb. 389, 23 N.W. 3 (1885); *The State v. Pierce County*, 10 Neb. 476, 6 N.W. 763 (1880).

[32] *Oxnard Beet Sugar Co. v. State*, 73 Neb. 57, 102 N.W. 80 (1905), *modified on denial of rehearing* 73 Neb. 66, 105 N.W. 716; *Van Horn v. State, supra* note 9; *Trumble v. Trumble, supra* note 30.

- 231 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

Act; to harmonize provisions; to provide operative dates; to provide severability; to repeal the original sections; and to declare an emergency.

Having reviewed the title and the contents of L.B. 574, we agree that this title undisputedly covers the contents of the bill. There can be no suggestion that any member of the Legislature was deceived of the contents of L.B. 574 as amended.[33]

But whether the title adequately expresses the contents of the bill is not what we have been asked to decide; rather, our task is to determine whether the contents of the bill comprise a single subject. On this issue, as we will explain, the parties not only disagree on the outcome, but they also disagree on how our analysis should even begin.

Hilgers argues that the first step in the single subject analysis is to look to the bill's title to identify the subject chosen by the Legislature. Once that subject is identified, he argues, the court is required to analyze whether all provisions of the bill are germane to that subject. Applying his proposed test in this case, Hilgers argues that the Legislature identified "public health and welfare" as L.B. 574's subject in the title and that all provisions of the bill—both those regulating abortion and those regulating gender-altering care—are germane to public health and welfare.

Planned Parenthood argues that a different mode of analysis is required for single subject challenges. It argues that the court's analysis starts not with the title chosen by the Legislature, but with the substance of the bill at issue, and that based on its review of the substance of the bill at issue, the court is tasked with identifying the bill's "main purpose."[34] Having identified that "main purpose," Planned Parenthood argues the court must go on to analyze whether its various provisions are "'naturally connected with and incidental to

---

[33] See, *State v. Barton, supra* note 21; *The People v. McCallum*, 1 Neb. 182 (1871).

[34] Brief for appellant at 21.

- 232 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

that main purpose.'"[35] Planned Parenthood argues that L.B. 574 fails the foregoing test at the first step and that it is impossible to identify a single main purpose in L.B. 574 without the purpose being so broad as to render the single subject requirement meaningless.

Both parties can point to portions of our case law to support their respective arguments as to how a single subject challenge to a statute should be analyzed. Hilgers' understanding of the proper single subject analysis finds support in *Jaksha*, the most recent case in which this court considered a single subject challenge to a statute.[36] In that case, a legislative bill that included provisions relating to property taxes, sales and use taxes, and corporate income taxes was challenged as containing more than one subject. We observed that the title of the challenged bill stated that it related to "taxation and revenue,"[37] and then we concluded that all of the provisions in the bill "relate and are germane to the general subject of taxation."[38] That, we concluded, was sufficient to withstand a single subject challenge under our precedents. One of those precedents was *Blackledge v. Richards*.[39] In that case, we stated that if the provisions of a bill are "germane to the purpose announced in the title to the act," that "is sufficient for purposes of Nebraska's Constitution."[40] Other cases are to the same effect.[41]

Some of this court's very early cases deciding single subject challenges to statutes also contain language suggesting that it

---

[35] *Id.*

[36] *Jaksha v. State, supra* note 10.

[37] *Id.* at 131, 486 N.W.2d at 874.

[38] *Id.* at 131-32, 486 N.W.2d at 874. See, also, 1991 Neb. Laws, L.B. 829.

[39] *Blackledge v. Richards*, 194 Neb. 188, 231 N.W.2d 319 (1975).

[40] *Id.* at 192, 231 N.W.2d at 323.

[41] See, e.g., *State ex rel. Baldwin v. Strain*, 152 Neb. 763, 42 N.W.2d 796 (1950) (analyzing whether provisions of bill were germane to subject expressed in title).

- 233 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

is the Legislature that identifies the subject for purposes of single subject challenges. As early as 1871, this court stated:

> The constitution not having fixed the degree of particularity with which a title is to express the subject, it is enough that the legislature, with this provision before them, have selected their own title; and although we might not agree upon it as the most suitable or comprehensive, the act for that reason is not to be declared void.
>
> The purpose of this provision is to prevent surprise in legislation, by leaving matter of one nature embraced in a bill whose title expresses another.[42]

Hilgers' position that our analysis should start with the bill's title also finds some support in the text of article III, § 14, particularly the language that the bill's subject "shall be clearly expressed in the title."

While Hilgers can point to prior cases that support his understanding of the single subject analysis, Planned Parenthood can as well. Our 1895 decision in *Van Horn*, for example, has language stating that courts should "look to the bill itself, to ascertain whether or not it contains more than one subject."[43] *Van Horn* also states that a statute will pass muster under article III, § 14, if the act has a "single main purpose" and "nothing [is] embraced in the act except what [is] naturally connected with and incidental to that purpose."[44] In many cases following *Van Horn*, we cited or quoted this language.[45]

Ultimately, we find that it is not necessary in this case to resolve any tensions in our case law as to whether, in a single subject challenge to a statute, a court should, as Hilgers argues, begin with the subject chosen by the Legislature or whether a court should, as Planned Parenthood argues, attempt

---

[42] *The People v. McCallum, supra* note 33, 1 Neb. at 194.

[43] *Van Horn v. State, supra* note 9, 46 Neb. at 72, 64 N.W. at 368.

[44] *Id.* at 74, 64 N.W. at 369.

[45] See, e.g., *Midwest Popcorn Co. v. Johnson*, 152 Neb. 867, 43 N.W.2d 174 (1950); *Gauchat v. School District*, 101 Neb. 377, 163 N.W. 334 (1917).

to independently identify a "single main purpose" with reference to the bill's text. Regardless of where our analysis begins in this case, we find that Planned Parenthood's challenge to L.B. 574 fails for reasons we will explain below.

If, as Hilgers urges, we begin our analysis with L.B. 574's title, as we did in *Jaksha*, the analysis is relatively straightforward. "[P]ublic health and welfare" is the subject identified by the Legislature in L.B. 574's title; the rest of the title describes the bill's various provisions. Although we and other courts have suggested that there may be a point at which a subject is simply too broad for single subject purposes,[46] we see no reason to find that "public health and welfare" is too broad a subject for the Legislature to select. "[P]ublic health and welfare" is not meaningfully broader than "taxation and revenue," a subject we did not find was too broad in *Jaksha*,[47] nor is it broader than many subjects blessed by other courts.[48]

Because we have identified "public health and welfare" as the subject, the *Jaksha* analysis would proceed to consider whether the provisions of L.B. 574 all are germane to "public health and welfare." We would find that they are. As we have discussed, L.B. 574 regulates both abortion and gender-altering care, but both abortion and gender-altering care are medical procedures and thus all provisions regulating the same fall within the subject of "public health and welfare."

---

[46] See *Trumble v. Trumble, supra* note 30, 37 Neb. at 345, 55 N.W. at 870 ("[b]ut the affairs of mankind are so interwoven that by similar reasoning a single statute proceeding step by step might be made to embrace the whole body of the law"). See, also, *McIntire v. Forbes*, 322 Or. 426, 446-47, 909 P.2d 846, 857 (1996) (rejecting "'activities regulated by state government'" as too broad a title). But see *Bowman v. Cockrill*, 6 Kan. 311, 335 (1870) ("we think it must always be left entirely within the discretion of the legislature to say how comprehensive and general, or how narrow and limited, that subject shall be").

[47] *Jaksha v. State, supra* note 10, 241 Neb. at 131, 486 N.W.2d at 874.

[48] See, e.g., *Kansas National Educ. Ass'n v. State*, 305 Kan. 739, 387 P.3d 795 (2017); *Townsend v. State*, 767 N.W.2d 11 (Minn. 2009) (public safety).

- 235 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

As we have said, however, even if we begin our analysis with the text of L.B. 574 and an independent inquiry into the bill's single main purpose, as Planned Parenthood urges, we still find that its challenge fails. Our cases that speak to a court's identification of a bill's purpose or object make clear that a court should not conclude that a bill violates the single subject clause merely because parts thereof could have been enacted in separate bills. As we stated in *Van Horn:* "In none of the cases already cited, and in none decided by this court, has it ever been held that the constitution required any subdivision of legislation into distinct acts, each having reference to only so much as might practicably form a single act."[49]

Prior cases have also emphasized that a bill may enact multiple policies, so long as those policies are united under a common purpose or object. We said, for example, in *K. C. & O. R. Co. v. Frey*[50] that

[t]he object of the framers of the constitution was not to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus greatly multiply their number, but it was intended that a proposed measure should stand upon its own merits, and that the several members of the legislature should be apprised of the purpose of the act when called upon to support or oppose it; in other words, members were prohibited from joining two or more bills together in order that the friends of the several bills may combine and pass them. It was never designed to place the legislature in a straightjacket and prevent it from passing laws having but one object under an appropriate title.

We have further noted that article III, § 14,

"does not restrict the legislature in the scope of legislation. It does not prohibit comprehensive acts, and no

---

[49] *Van Horn v. State, supra* note 9, 46 Neb. at 74, 64 N.W. at 369.

[50] *K. C. & O. R. Co. v. Frey*, 30 Neb. 790, 792, 47 N.W. 87, 87-88 (1890). See, also, *Trumble v. Trumble, supra* note 30.

- 236 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

matter how wide the field of legislation the subject is single so long as the act has but a single main purpose and object. . . . It has always been said that the legislature might choose for itself its manner of legislation, and that an act, no matter how comprehensive, would be valid provided a single main purpose was held in view, and nothing embraced in the act except what was naturally connected with and incidental to that purpose."[51] Read together, our case law holds that so long as the various parts of a bill are germane to a single purpose or object, a bill may be as comprehensive as the Legislature desires.[52]

The constitutional inhibition against more than "'one subject being embraced in a bill'" cannot be too strenuously insisted upon or too earnestly emphasized.[53] The purpose of a single subject requirement is to prevent surreptitious legislation and to provide notice to the public and members of the Legislature.[54] We have noted that the rule operates

"[f]irst, to prevent hodge-podge or 'logrolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire."[55]

---

[51] *Gauchat v. School District, supra* note 45, 101 Neb. at 379, 163 N.W. at 335 (quoting *Van Horn v. State, supra* note 9).

[52] See, e.g., *Van Horn v. State, supra* note 9.

[53] *State v. Barton, supra* note 21, 91 Neb. at 369, 136 N.W. at 26.

[54] See, e.g., *Blackledge v. Richards, supra* note 39; *State v. Levell*, 181 Neb. 401, 149 N.W.2d 46 (1967); *Omaha Parking Authority v. City of Omaha*, 163 Neb. 97, 77 N.W.2d 862 (1956); *Nebraska Mid-State Reclamation District v. Hall County*, 152 Neb. 410, 41 N.W.2d 397 (1950).

[55] *Weis v. Ashley*, 59 Neb. 494, 497, 81 N.W. 318, 319 (1899).

- 237 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

Ultimately, "[i]f a bill has but one general object, no matter how broad that object may be, and contains no matter not germane thereto, and the title fairly expresses the subject of the bill, it does not violate [article III, § 14]."[56]

With this background in mind, we turn to L.B. 574. Planned Parenthood asserted below, and continues to contend on appeal, that L.B. 574 is composed of two separate bills that were combined into one to increase the likelihood of their passage. Planned Parenthood relies on the legislative history, which shows that the Nebraska Heartbeat Bill did not survive a cloture vote.

As an initial matter, we decline to consider the workings of the legislative process in determining whether a bill comprises a single subject. Regardless of whether our analysis begins with the subject expressed in the title or an examination of the bill's contents, our focus is on whether a bill covers one subject. Although legislative history may be informative as to the meaning of a bill, our inquiry begins and ends with the bill itself, for it is the bill that is subject to article III, § 14.[57]

Even if Planned Parenthood's arguments based on L.B. 574's history are set to the side, Planned Parenthood still maintains that one cannot identify within the bill a single main purpose that would survive a single subject analysis. It argues either that L.B. 574's purpose is to regulate abortion and its provisions regarding gender-altering care are not naturally connected to that purpose or that its main purpose is to regulate gender-altering care and its provisions regarding abortion are not naturally connected to that purpose. Planned Parenthood argues that any purpose or object that would

---

[56] *Van Horn v. State, supra* note 9, 46 Neb. at 62, 64 N.W. at 365-66 (syllabus of the court). See, also, *Jaksha v. State, supra* note 10; *Anderson v. Tiemann*, 182 Neb. 393, 155 N.W.2d 322 (1967); *Rein v. Johnson*, 149 Neb. 67, 30 N.W.2d 548 (1947).

[57] See *State v. Lancaster County*, 17 Neb. 85, 22 N.W. 228 (1885) (noting repealed section did not relate to subjects embraced either in original act or as amended).

- 238 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

encompass both L.B. 574's abortion and gender-altering care provisions would be so broad as to render the single subject requirement meaningless.

We disagree with Planned Parenthood's contention that it is not possible to identify a single purpose of L.B. 574 that withstands single subject scrutiny. L.B. 574 does regulate both abortion and gender-altering care, but both abortion and gender-altering care are medical procedures, and L.B. 574 prescribes rules that define if and when such procedures can be performed. To that point, § 8 of L.B. 574 designates both abortion and gender-altering care provided in violation of L.B. 574 as unprofessional conduct for purposes of the Uniform Credentialing Act,[58] a statute that regulates the care that licensed health care providers in the state may provide.[59] And if L.B. 574's main purpose is to regulate the medical care that may be provided within the state, each of its provisions are naturally connected with, and incidental to, that main purpose.

In reaching this determination, we are guided by our decision in *Oxnard Beet Sugar Co. v. State*.[60] In that case, the bill at issue concerned the encouragement of the manufacture of beets into sugar and the manufacture of chicory. Initially, our analysis focused on the relationship between the manufacture of sugar and the manufacture of chicory. In doing so, we determined that "[t]here [was] no such close relation between the manufacture of sugar and the manufacture of chicory as to say that provisions for the encouragement of the manufacture of the one are the means by which the encouragement of the other is logically accomplished."[61] However, in denying rehearing, we recognized that the proper analysis was not of the relationship between the manufacture of sugar and the

---

[58] See Neb. Rev. Stat. §§ 38-101 to 38-1,142 (Reissue 2016, Cum. Supp. 2022 & Supp. 2023).

[59] See § 38-179(15) and (16) (Supp. 2023).

[60] *Oxnard Beet Sugar Co. v. State, supra* note 32.

[61] *Id.* at 63, 105 N.W. at 82.

- 239 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

manufacture of chicory. Instead, the correct analysis was of the object of the bill. In that case, the object was to "'build up'" the manufacturing industries in Nebraska to "'develop our natural resources'" and increase our economic diversity.[62]

Likewise, we reject Planned Parenthood's contention that L.B. 574 is unconstitutional because its regulation of abortion does not further its regulation of gender-altering care and vice versa. Here, even though abortion and gender-altering care are distinct types of medical care, and even though L.B. 574 effectuates its purpose or object differently for each type, when broadly construing L.B. 574, all its provisions certainly are encompassed within the regulation of permissible medical care. We emphasize that, in our determination that the provisions of L.B. 574 each seek to regulate medical care, we make no comment on the substance of L.B. 574. Our focus is on whether L.B. 574 complies with article III, § 14.

## VI. CONCLUSION

After our review of the facts of this case and our historical legal precedent wherein we have rarely found violations of Neb. Const. art. III, § 14, we find no merit to Planned Parenthood's argument that L.B. 574 contains more than one subject in violation of article III, § 14. Unlike our dissenting colleague, and particularly in the absence of a suggestion that the title given by the Legislature was misleading, we decline to reject the elected representatives' articulation of a subject in the guise of a search for the perfect title. Additionally, we find Planned Parenthood's assignments of error to be without merit.

We affirm the decision of the district court.

AFFIRMED.

---

[62] *Id*. at 67, 105 N.W. at 717.

PAPIK, J., concurring.

I agree that 2023 Neb. Laws, L.B. 574, does not violate the single subject requirement of Neb. Const. art. III, § 14, for

- 240 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

the reasons stated in the majority opinion. I write separately to suggest that in a future case, there may be a good reason to reconsider some of our precedent interpreting and applying article III, § 14. I also respond to certain points raised in Justice Miller-Lerman's partial dissent and in the majority opinion.

*Single subject? Single purpose? Single object?*

The Nebraska Constitution provides that no legislative bill "shall contain more than one subject." Neb. Const. art. III, § 14. That language has been a part of the state constitution since its adoption in 1875. See Neb. Const. art. III, § 11 (1875). See, also, Neb. Const. art. III, § 19 (1866). For nearly as long as that language has been a part of the Nebraska Constitution, this court has, at various times, been called upon to determine whether a legislative enactment contains "more than one subject." As the majority opinion details, however, this court has not always framed the single subject analysis in the same way. Consequently, there are multiple lines of case law regarding single subject challenges that are, at the very least, in tension with one another.

In one of those lines of case law, relied upon in this case by Planned Parenthood, this court has analyzed single subject challenges by attempting to identify a bill's "main purpose" or "object" and then determining whether the entirety of the bill is "naturally connected with and incidental to" that purpose or object. See *Van Horn v. State*, 46 Neb. 62, 74, 64 N.W. 365, 368, 369 (1895). See, also, *Midwest Popcorn Co. v. Johnson*, 152 Neb. 867, 43 N.W.2d 174 (1950); *Gauchat v. School District*, 101 Neb. 377, 379, 163 N.W. 334, 335 (1917) (quoting *Van Horn, supra*, for proposition that legislative enactment complies with single subject requirement "'so long as the act has but a single main purpose and object'"); *Trumble v. Trumble*, 37 Neb. 340, 344, 55 N.W. 869, 870 (1893) ("[p]rovided the object of the law be single[,] the whole law may be embraced in a single enactment, although it may require any number of details to accomplish the object").

- 241 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

I have some doubts that this focus on a legislative enactment's purpose or object is consistent with the text or original understanding of article III, § 14. The Nebraska Constitution does not require that bills have a single purpose or object; it provides that "[n]o bill shall contain more than one *subject*." Neb. Const. art. III, § 14 (emphasis supplied). I do not believe that the term "subject" is synonymous with object or purpose. On this point, I am persuaded by Millard H. Ruud, the author of a frequently cited law review article on single subject provisions. See Millard H. Ruud, "*No Law Shall Embrace More Than One Subject*," 42 Minn. L. Rev. 389 (1958). As Ruud explained, "The object of an act suggests its purpose or aim," while the "[s]ubject of an act suggests its subject matter or that with which it deals." *Id.* at 394. It would seem to follow that a legislative enactment may have or accomplish multiple purposes and yet still pertain to one subject.

Historical evidence from the era in which Nebraska's single subject provision was adopted also suggests that the term "subject" was understood to have a different meaning than "object." An early Iowa Constitution provided that "[e]very law shall embrace but one object," Iowa Const. art. III, § 26 (1846), but in an 1857 constitutional convention, delegates replaced the term "object" with "subject," with delegates in agreement that the word "subject" was broader. See *Planned Parenthood v. Reynolds*, 975 N.W.2d 710 (Iowa 2022). Delegates to an 1850 Indiana constitutional convention also modified a proposed provision that required laws to "embrace but one object" so that it required laws to "embrace but one subject." See Justin W. Evans & Mark C. Bannister, *The Meaning and Purposes of State Constitutional Single Subject Rules*: *A Survey of States and the Indiana Example*, 49 Val. U. L. Rev. 87, 111 (2014) (internal quotation marks omitted). Like Iowa and Indiana, the framers and ratifiers of Nebraska's Constitution chose to require bills to contain a single subject, rather than a single object.

- 242 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

In addition to my concerns based on the constitutional text and history, I have concerns about whether a test that requires courts to identify the main purpose or object of a legislative enactment lends itself to principled judicial implementation. As noted above, a legislative enactment's purpose or object would refer to the goal or aim the legislation seeks to achieve. But, it seems to me, almost all legislation, at least in a sense, seeks to achieve multiple goals or aims. In addition, it is not difficult to frame the purpose of legislation at different levels of generality. See, e.g., Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 18 (2012) ("[a]ny provision of law or of private ordering can be said to have a number of purposes, which can be placed on a ladder of abstraction"); Max Radin, *Statutory Interpretation*, 43 Harv. L. Rev. 863 (1930) (discussing difficulty in identifying single purpose of legislation). In my view, the difficulty in identifying a legislative enactment's purpose or purposes in a principled manner also may counsel in favor of an alternative approach to resolving challenges under article III, § 14.

I recognize that a single subject provision will always present challenges for courts; many courts and commentators have pointed out that the term "subject" is itself not easily defined. See, generally, Richard Briffault, *The Single-Subject Rule: A State Constitutional Dilemma*, 82 Alb. L. Rev. 1629 (2018-19). That said, courts have developed tests for resolving single subject challenges that, to my mind, are both more capable of principled judicial implementation and more consistent with the text and history of article III, § 14, than tests requiring a search for an enactment's object or purpose. As the majority opinion discusses, some of this court's prior cases suggest that single subject challenges should be analyzed merely by asking whether all provisions in a bill "relate and are germane to" the subject identified by the Legislature in a bill's title. See, e.g., *Jaksha v. State*, 241 Neb. 106, 131-32, 486 N.W.2d 858, 874 (1992). See, also, *Franklin v. State*, 887 So. 2d 1063, 1074 (Fla. 2004) ("a court generally need

- 243 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

look no further than the title of the act in question when defining the single subject"); Jeffrey S. Sutton, Who Decides? States as Laboratories of Constitutional Experimentation 261 (2022) (suggesting courts generally allow legislature to define subject of bill in title but "police the requirement that the rest of the bill confine itself to that subject alone").

Another approach followed by several other state courts does not give the legislative branch the same leeway to define a bill's subject, but also does not focus on the bill's object or purpose. At roughly the same time that this court began framing the single subject inquiry in terms of object and purpose, the Minnesota Supreme Court wrote the following in a case challenging legislation as violating a single subject provision:

> The term "subject," as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.

*Johnson v. Harrison*, 47 Minn. 575, 577, 50 N.W. 923, 924 (1891).

Many other courts have followed the approach taken by the Minnesota Supreme Court in *Johnson* and analyze single subject challenges by asking something along the lines of whether a legislative enactment covers two or more "dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other." See *Arizona School Boards Ass'n,*

- 244 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

*Inc. v. State*, 252 Ariz. 219, 227-28, 501 P.3d 731, 739-40 (2022) (internal quotation marks omitted). See, also, *Kansas Nat. Educ. Ass'n v. State*, 305 Kan. 739, 387 P.3d 795 (2017); *American Booksellers Assoc. v. Webb*, 254 Ga. 399, 329 S.E.2d 495 (1985). Both of the above approaches to single subject challenges strike me as more consistent with article III, § 14, than our prior cases focusing on a bill's object or purpose.

*Response to Partial Dissent.*

There appears to be some common ground between this concurrence and Justice Miller-Lerman's partial dissent. Both express misgivings with prior opinions of this court that focused on the object or purpose of a legislative enactment in analyzing challenges brought under article III, § 14. And, as I understand the partial dissent, it argues that this court should instead analyze such challenges by using something like the analysis employed by the Minnesota Supreme Court in *Johnson*, from which I quoted approvingly above.

But when I say that the partial dissent argues that single subject challenges should be analyzed under "something like" *Johnson, supra*, I use that phrase advisedly. For although the partial dissent quotes *Johnson* and a Georgia Supreme Court case with very similar language, it also argues against the idea that, when deciding single subject challenges, courts should take a "'liberal'" or "'broad'" approach to what constitutes a permissible unifying subject. But that is exactly what *Johnson* endorses. To make this point, I repeat language from that case, this time with emphasis on the language endorsing a broad definition of subject:

> *The term "subject," as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection.* To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that *by no fair*

- 245 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

*intendment* can be considered as having *any* legitimate connection with or relation to each other. All that is necessary is that act should embrace some one *general* subject; and by this is meant, merely, that all matters treated of should fall under some *one general idea*, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, *one general subject*.

*Johnson v. Harrison*, 47 Minn. 575, 577, 50 N.W. 923, 924 (1891) (emphasis supplied).

*Johnson* is by no means an outlier in endorsing the view that in determining whether the various parts of a legislative enactment pertain to a single subject, a subject may be defined broadly or, as some courts put it, liberally. See, e.g., *Planned Parenthood v. Reynolds*, 975 N.W.2d 710, 723 (Iowa 2022) (observing that while single subject rule "is not entirely without teeth, the legislature should be afforded considerable deference"); *Gregory v. Shurtleff*, 299 P.3d 1098, 1112 (Utah 2013) (endorsing view that single subject rule "'should be liberally construed in favor of upholding a law'") (quoting *Salt Lake City v. Wilson*, 46 Utah 60, 148 P. 1104 (1915)); *Associated Bldrs. and Contr. v. Ventura*, 610 N.W.2d 293, 299 (Minn. 2000) (observing that "single subject provision should be interpreted liberally and the restriction would be met if the bill were germane to one general subject"); *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St. 3d 451, 498, 715 N.E.2d 1062, 1100 (1999) (stating that "a subject for purposes of the one-subject rule is to be liberally construed as a classification of significant scope and generality"); *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 352, 718 N.E.2d 191, 198, 240 Ill. Dec. 710, 717 (1999) (stating that "the term 'subject' as set forth in the constitution is liberally construed in favor of upholding the legislation"); *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 531, 418 N.E.2d 207, 214 (1981) (stating that in deciding single subject challenges "a very liberal interpretation is to be applied, with all doubts resolved in favor

- 246 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

of the legislation's validity"). See, also, Richard Briffault, *The Single-Subject Rule: A State Constitutional Dilemma*, 82 Alb. L. Rev. 1629, 1642-43 (2018-19) ("[m]ost courts have declared that they will take a deferential approach to the legislature, adopting a 'liberal interpretation' of the meaning of 'subject' and of the degree of connectedness among a bill's parts necessary to satisfy the germaneness standard").

Even *Arizona School Boards Ass'n, Inc. v. State*, 252 Ariz. 219, 501 P.3d 731 (2022), the Arizona Supreme Court decision the partial dissent relies upon, includes some language calling for a broad definition of subject. In that case, although the Arizona Supreme Court cautioned that its single subject rule should not be read so broadly as to "render the constitutional requirements nugatory," it also said that the provision "should be read liberally so as not to impede or embarrass the legislature." *Id.* at 227, 501 P.3d at 739 (internal quotation marks omitted). Echoing *Johnson, supra*, the Arizona Supreme Court also wrote that, under Arizona's law, an act violates the single subject rule if it includes "dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other." *Arizona School Boards Ass'n, Inc.*, 252 Ariz. at 227-28, 501 P.3d at 739-40 (internal quotation marks omitted). The Arizona Supreme Court struck down the statute at issue in that case only after finding that it contained an "array of discordant subjects that are not reasonably connected to one general idea, and certainly not to budget procedures," the subject set forth in the bill's title. *Id.* at 228, 501 P.3d at 740. The court noted that those subjects included "matters ranging from dog racing, the lottery, voter registration, election integrity, the Governor's emergency powers, the Board of Trustees' duties and powers, the definition of 'newspaper,' political contributions, management of the state capital museum, and COVID-19." *Id.*

What accounts for courts' general inclination to allow for "subject" to be defined broadly? Surely it is due at least in

- 247 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

part to the usual deference courts give to enactments of coordinate branches of government. But I would argue there is another reason courts do and should permit subjects to be defined broadly in deciding single subject challenges: the difficulty in coming up with any fair definition of "subject" that does not reduce the analysis to a complete "[e]ye of the [b]eholder" test. See Daniel H. Lowenstein, *California Initiatives and the Single-Subject Rule*, 30 UCLA L. Rev. 936, 938 (1983). As commentators have pointed out, no one has been able "to come up with a clear and consistent definition of what constitutes a 'single subject.'" Briffault, 82 Alb. L. Rev. at 1630. See, also, *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 170, 948 N.W.2d 244, 264 (2020) (Papik, J., dissenting; Miller-Lerman, J., joins) (observing that term "'subject' as used in a single subject rule and any verbal tests that attempt to define it are malleable").

And, indeed, the task seems well-nigh impossible. As another commentator has explained:

> [A]ny collection of items, no matter how diverse and comprehensive, will fall "within" a single (broad) subject if one goes high enough up the hierarchy and, on the other hand, the most simple and specific idea can always be broken down into parts, which may in turn plausibly be regarded as separate (narrow) subjects.

Lowenstein, 30 UCLA L. Rev. at 940-41. See, also, Jeffrey S. Sutton, Who Decides? States as Laboratories of Constitutional Experimentation 260 (2022) ("[t]he definition of 'subject' faces a soaring level of generality problem. How high up the ladder of abstraction should a court go in deciding what counts as a subject?"). Faced with this task, it is understandable that courts have settled for an approach that one commentator describes as "[g]eneral deference with intermittent enforcement in the most egregious cases." Briffault, 82 Alb. L. Rev. at 1659. Under a more aggressive approach that the partial dissent appears to favor, "[t]he problems of subject

- 248 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

definition and consistent application would only get worse . . . ." *Id.* at 1658.

With this understanding in mind, it is my view that a challenge to L.B. 574 fails even if analyzed under a single subject test that requires the court to review the various provisions of the bill and ask whether those provisions, in the words of the partial dissent, "are related to each other and form one subject." Applying the test articulated in *Johnson*, the various provisions of L.B. 574 are not so "dissimilar and discordant . . . that by no fair intendment can [they] be considered as having any legitimate connection with or relation to each other." *Johnson v. Harrison*, 47 Minn. 575, 577, 50 N.W. 923, 924 (1891). As the majority opinion explains, both abortion and what L.B. 574 calls "gender-altering procedures" are medical procedures, and L.B. 574 regulates those medical procedures by placing limits on their performance in Nebraska.

The partial dissent objects to the notion that the various provisions of L.B. 574 all relate to the subject of health care regulation on the grounds that the legislation will affect more than just health care providers. I do not understand any of the opinions in this case to assert that the provisions of L.B. 574 affect only health care providers. But I also am not persuaded that a legislative enactment that directly regulates some parties, while also affecting others, necessarily contains two subjects in violation of article III, § 14. Indeed, if that were the case, it would seem that most legislation would be unconstitutional.

*Response to Majority Opinion and Partial Dissent.*

Prior to concluding, I make one additional observation regarding the majority opinion and the partial dissent. Those opinions engage in some sparring on whether this court should apply the same analysis in resolving single subject challenges to legislative enactments under article III, § 14, that it applies to single subject challenges to voter initiative measures under

- 249 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

article III, § 2. The majority takes the position that this court should, and does, take a stricter approach to reviewing voter initiative measures for single subject compliance than it does when considering whether a legislative enactment complies. The partial dissent pushes back, suggesting that the same standard should be applied to both types of measures.

As this is not a case challenging a voter initiative measure, I do not believe it is necessary to opine on the standards applied in such cases. I would prefer to postpone discussion of the appropriate standard for deciding a single subject challenge to a voter initiative measure to a case raising such a challenge. Respectfully, I would avoid discussing that issue here.

*Conclusion.*

Courts have devised a number of tests to analyze single subject challenges to legislative enactments. As the majority opinion details, the parties here each suggest a different test, both of which find some support in our precedent, and the partial dissent offers a third. Because I believe Planned Parenthood's challenge to L.B. 574 would fail under any of these tests, I see no need to reconsider any precedent in this case. In a future case, however, I would be open to overruling our cases that focus on a bill's object or purpose in favor of an approach that is more consistent with article III, § 14.

STACY, J., joins in this concurrence.

MILLER-LERMAN, J., concurring in part, and in part dissenting.

I concur in part, and in part dissent. I specifically respectfully dissent from the majority's one subject legal analysis and its conclusion that 2023 Neb. Laws, L.B. 574, is constitutional because legislative acts pertaining to abortion and gender-affirming care comprise one subject. Under the text of Nebraska Const. art. III, § 14, I do not believe that abortion and gender-affirming care comprise "one subject."

I concur in the portion of the majority opinion that concludes that it is the power and duty of this court to determine

- 250 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

the constitutionality of a statute. See *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992). Determining whether a legislature has followed constitutional mandates that expressly govern its activities is given to the courts. "This is of the very essence of judicial duty." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L. Ed 60 (1803). This case is justiciable.

Because the majority concludes that the "main purpose" of L.B. 574 is to regulate medical care, I would conclude that Sarah Traxler, M.D., the medical director of Planned Parenthood who performs abortions, has standing, and I dissent from the portion of the majority opinion that declines to so conclude. Cf. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 144 S. Ct. 1540, ___ L. Ed. 2d ___ (2024) (holding that plaintiffs who do not prescribe or use abortion drug mifepristone lack standing).

Regarding the constitutional one subject and title requirements of Neb. Const. art. III, I dissent from the majority opinion that concludes that L.B. 574 is constitutional. I do not believe abortion and gender-affirming care are "one subject" under the text of the Nebraska Constitution and the cases that properly construe the text of Neb. Const. art. III, § 14.

Both the majority and concurring opinions recognize the inconsistencies in Nebraska Supreme Court precedent regarding title and one subject but decline to untangle the jurisprudence. I believe now is the time to clarify, rather than perpetuate the confusion. As I recently wrote in my "impassioned" dissent in *Joshua M. v. State*, 316 Neb. 446, 5 N.W.3d 454 (2024) (Miller-Lerman, J., dissenting), the majority has recognized the inconsistencies, nevertheless again missed an opportunity to clarify the applicable law. See Lori Pilger, *Nebraska Supreme Court Divided Over Whether State Can Be Held Liable for Abuse by Foster Parent*, Lincoln Journal Star, May 3, 2024.

In its summary of the applicable law, the majority holds: "Ultimately, 'if a bill has but one general object, no matter how broad that object may be, and contains no matter not

- 251 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

germane thereto, and the title fairly expresses the subject of the bill, it does not violate [article III, § 14].'" In my analysis below, I explain why I believe the majority's holding regarding "one subject," especially its embrace of "general *object*, no matter how *broad*," in lieu of "one subject," is not faithful to the constitutional text and why the better-reasoned cases stick to "subject" and do not endorse the concept of broad "latitudinarian construction." *The State, ex rel. Jones v. Lancaster County*, 6 Neb. 474, 484 (1877).

*Nebraska Const. Art. III, § 14:*
*Title and One Subject.*

Nebraska Const. art. III, § 14, provides as relevant here: "No bill shall contain more than one subject, and the subject shall be clearly expressed in the title."

Under article III, § 14, to be constitutional, a bill must meet two requirements: it must be limited to one subject and the title must be sufficient. Because of the use of the word "and," the requirements are conjunctive; a failure to meet either the one subject or title requirement is fatal to constitutionality. I believe, given the order of the text, it is logical to identify the subject before assessing the sufficiency of its subsequent expression in the title. To identify the one subject, one should look to the acts and see how they are related to each other. I am aware, and the majority acknowledges, there are Nebraska cases that proceed in either order. However, regardless of order, we are agreed that a deficiency of either single subject or title renders the bill unconstitutional.

It is generally agreed that the title sufficiency requirement notifies legislators and the public about the contents of the bill. A title is sufficient if it clearly expresses the subject of the bill even if more appropriate language or a better arrangement of language would be better. See *State v. Ure*, 91 Neb. 31, 135 N.W. 224 (1912).

It is generally agreed that the single subject, sometimes referred to as "duplicity prohibition," does several things,

- 252 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

including limiting logrolling whereby legislators bundle different unrelated pieces of legislation to gather sufficient votes to ensure passage of the package, despite insufficient support for individual components. The logrolling prohibition has been repeatedly described in the Nebraska cases, such as the following quotation from *White v. The City of Lincoln*, 5 Neb. 505, 515 (1877) (describing the practice to be avoided as "'[t]he practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state'"). Although the legislative path of L.B. 574 does not control my analysis, the majority has noted that after the abortion act failed, it was later added to the gender-affirming act.

The duplicity prohibition accurately reveals a legislator's position on the individual topics of a bill, whereas a logrolled bill provides political cover. See Millard H. Ruud, "*No Law Shall Embrace More Than One Subject*," 42 Minn. L. Rev. 389 (1958).

A bill that has more than one subject can be stopped by a second legislative chamber in all states except Nebraska. See *Board of Supervisors of Ramsey County v. Heenan*, 2 Minn. 330 (1858). See, generally, Miriam Seifter, *Countermajoritarian Legislatures*, 121 Colum. L. Rev. 1733, 1735 (2021) (discussing legislatures as "voice of the people"). However, because the Legislature in Nebraska is now limited to one chamber, it is all the more important that the Nebraska Supreme Court not shy away from doing its mandatory duty to enforce article III, § 14. "[E]nforcing the separation of powers is a judicial duty, even when it requires rejecting the work of the other branches." Seifter, 121 Colum. L. Rev. at 1779. It has long been observed that the "provisions of the [one subject section] are mandatory, and must be complied with, or the act embracing more than one subject will be held inoperative and

- 253 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

void." *The State, ex rel. Jones v. Lancaster County*, 6 Neb. 474, 479 (1877).

*"One Subject": The Majority's Analysis Is Not Consistent With the Text Of Article III, § 14, and It Was Inappropriate to Invent a "Main Purpose" Rather Than Identifying the Constitutional "One Subject."*

Although Planned Parenthood's challenge to L.B. 574 does not focus on the correctness of its title, the title challenge cases appear to explain how earlier imprecise cases and the majority substituted "object" and "main purpose" for "one subject" and in so doing departed from the Nebraska Constitution's text. I agree with the concurring opinion that instead of being faithful to the text of article III, § 14, which requires "one subject," the cases have substituted "single object," "single purpose," and "main purpose" in their analysis. And the majority perpetuates this substitution today. This substitution by the courts may have been unwitting. Cf. *Planned Parenthood v. Reynolds*, 975 N.W.2d 710, 722 (Iowa 2022) (explaining that in 1857, Iowa deliberately replaced "'object'" with "'subject'" in Iowa Constitution).

For the reasons recited in the concurrence not repeated here, the words "object" and "purpose" are not synonyms for the constitutional word "subject." It has been explained that "[t]he object of an act suggests its purpose or aim," whereas the "[s]ubject of an act suggests its subject matter or that with which it deals." Ruud, 42 Minn. L. Rev. at 394. "Object" and "purpose" are inconsistent with the text of the Constitution, which uses "subject," and it is ordinarily best to start with the text. See *Garland v. Cargill*, 602 U.S. 406, 144 S. Ct. 1613, ___ L. Ed. 2d ___ (2024). I respectfully believe that it is an error of law to substitute "object" and "purpose" for the constitutional requirement of "subject" and that therefore, it is analytically inappropriate for the court to invent a main purpose.

The conflating of "object" and "purpose" with "subject"—as it pertains to proper titling of the bill and as it has morphed

- 254 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

into one subject considerations by this court—may stem from *Affholder v. State*, 51 Neb. 91, 70 N.W. 544 (1897), which involved a challenge to the constitutionality of an act. This court stated that although a subject was not mentioned in the title, the bill was constitutional because article III, § 14, then found at article III, § 11, "admit[s] of the insertion in a legislative act of all provisions which, though not specifically expressed in the title, are comprehended within the *objects and purposes of the act as expressed in its title.*" *Affholder v. State*, 51 Neb. at 92, 70 N.W. at 545 (emphasis supplied). The court in *Affholder* relied on Alabama and Minnesota cases for this proposition. See, also, *K. C. & O. R. Co. v. Frey*, 30 Neb. 790, 790, 47 N.W. 87, 87 (1890) (syllabus of the court) (stating that "[a] bill which has but one *general object that is clearly expressed in the title thereof*, is not objectionable on the ground that it contains two or more subjects") (emphasis supplied). Requiring expression of a "general object" in the title instead of "one subject" does not adhere to the constitution, is an incorrect statement of law, and invites judicial invention as we see today.

*The People v. Mahaney*, 13 Mich. 481 (1865), was authored by Judge Thomas M. Cooley, a constitutional scholar. See Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union (1868). Judge Cooley wrote in *Mahaney* that the constitution is satisfied "when the law has but one *general object, which is fairly indicated by its title.*" 13 Mich. at 495 (emphasis supplied). *Mahaney* has been cited in Nebraska opinions about 25 times. But unlike the Nebraska Constitution that uses "subject," the Michigan Constitution at issue in *Mahaney* provided that "'no law shall embrace more than one *object*, which shall be expressed in its title.'" 13 Mich. at 488. So, it appears that fondness to this day of Nebraska Supreme Court opinions equating "object" and "purpose" with "subject" may have evolved unintentionally and from "title" analysis to "one subject" analysis. Nevertheless, that does not

- 255 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

explain this court's perpetuation of the error, and in particular, I believe the majority was inappropriate as a matter of law when it went searching for L.B. 574's main purpose and failing a clear articulation by the Legislature, invented its own "main purpose," i.e., "to regulate medical care." It was the duty of the Legislature under article III, § 14, to compose legislation, including titling, which stated "one subject"; failure to so compose renders the bill unconstitutional. It is not the role of this court to rescue legislative bills.

*"Broad" and "Object." The Majority Was Inappropriate
When It Searched for a "General Object No Matter
How Broad That Object May Be."*

I respectfully disagree from the majority's holding that "'[i]f a bill has but one general object, *no matter how broad that object may be . . .* it does not violate [article III, § 14].'" (Emphasis supplied.) I have explained my disagreement with the use of "object" as an inappropriate substitute for the textual "subject" in the preceding discussion. I also disagree with the majority's search for a "broad" unifying theme that might explain why abortion and gender-affirming acts are one subject. The word "broad" is not in article III, § 14; instead, the text requires "one subject." "Broad" and "one" are obviously in tension. Accordingly, I respectfully believe it was inappropriate for the majority to search "broadly" for a nugget that could be called one subject.

Yet again, the cases in this area have injected approaches not expressed or sanctioned in the text of article III, § 14, and again, they have been endorsed and perpetuated today. In this regard, the majority and concurring opinions cite numerous instances in which opinions have described the approach to one subject challenges as permitting a "liberal" or "broad" approach that leans toward finding acts of the Legislature constitutional. I am aware of this catalog that indulgently applies the one subject requirement, but I am also aware of the scholarly criticism of that approach. E.g., Justin W. Evans

- 256 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

& Mark C. Bannister, *Reanimating the States' Single Subject Jurisprudence: A New Constitutional Test*, 39 S. Ill. U. L.J. 163 (2015). Although it may be presumed that a statute is constitutional, I do not believe this court should grant leeway and indulge the Legislature at the expense of the Constitution. It has been observed: "If the purpose of the single-subject requirement is to reform the operations of the state legislature, it may be odd to leave enforcement of the requirement to the legislature itself." Richard Briffault, *The Single-Subject Rule: A State Constitutional Dilemma*, 82 Alb. L. Rev. 1629, 1644 (2018-19).

In dicta, the majority, unnecessarily in my view, contrasts cases under Neb. Const. art. III, § 2, with challenges under Neb. Const. art. III, § 14. Article III, § 2, pertains to statutes initiated by the people and provides that

> laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. . . . The constitutional limitations as to the scope and subject matter of statutes enacted by the Legislature shall apply to those enacted by the initiative. Initiative measures shall contain only one subject.

This sounds like the "one subject" limitations relating to legislative statutes and popular initiatives would be the same under both article III, § 14, and article III, § 2.

But as I read the majority opinion, the "one subject" constitutional provision in popular initiatives is more strict than the broad "one subject" constitutional provision in statutes initiated by the Legislature, a concept I do not endorse. Why is "one subject" in statutes by initiative evaluated strictly but statutes by the Legislature evaluated liberally despite the constitutional admonition in article III, § 2, that "[t]he constitutional limitations as to scope and subject matter of statutes enacted by the Legislature shall apply" to the people's initiatives? Perhaps the reference to article III, § 2, voter initiative jurisprudence provides an explanation for the strict approach of the per curiam majority in *State ex rel. Wagner v. Evnen*,

- 257 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

307 Neb. 142, 948 N.W.2d 244 (2020) (majority applying strict approach holding that medical marijuana proposal by initiative contained more than one subject under article III, § 2, and should not appear on ballot).

It appears that the broad indulgent approach taken to evaluating constitutionality of statutes initiated by the Legislature evolved in the early cases, perhaps unwittingly. In *Van Horn v. State*, 46 Neb. 62, 74, 64 N.W. 365, 369 (1895), the text of the opinion states that "it has always been said that the legislature might choose for itself its manner of legislation, and that an act, no matter how comprehensive, would be valid." However, the syllabus reads "no matter how broad" and the progeny of *Van Horn* use the syllabus language of "broad" over the case's text. *Id*. at 62, 64 N.W. at 365 (syllabus of the court). "Broad" and "comprehensive" are not synonymous.

There seems to be no quarrel that a bill is constitutional if it comprehensively addresses one subject, for example, an act adopting a code of civil procedure, *De France v. Harmer*, 66 Neb. 14, 92 N.W. 159 (1902) (favorably regarding enactment of code of civil procedure). But an act including broad disparate subjects is invalid. Where there is a discrepancy between the opinion and the syllabus, the opinion controls the syllabus. *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996). Injecting "broad" into the one subject analysis invited the latitudinarian situation we find reflected in the majority opinion. Based on the foregoing, in a one subject constitutional challenge under article III, § 14, I do not endorse the majority's holding that a bill does not violate article III, § 14, "no matter how broad that object may be." This approach introduces the specter of the court's framing a bill's subject at a level that evades meaningful review. See *People v. Boclair*, 202 Ill. 2d 89, 789 N.E.2d 734, 273 Ill. Dec. 560 (2002). This approach leads to judicial underenforcement of the constitutional one subject requirement. Justin W. Evans & Mark C. Bannister, *Reanimating the States'*

- 258 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

*Single Subject Jurisprudence: A New Constitutional Test*, 39
S. Ill. U. L.J. 163 (2015).

*Application of Article III, § 14, to This Case. Abortion
and Gender-Affirming Acts Are Not Related and
Not One Subject, and Therefore, L.B. 574 Violates
the One Subject Requirement of Article III, § 14.*

Challenges to the constitutionality of a bill under Neb.
Const. art. III, § 14, often address title sufficiency or compli-
ance with the one subject requirement but sometimes they
address both. This case focuses on compliance with the one
subject requirement. As I have noted above, given the conjunc-
tive requirements in the constitution, i.e., bill limited to one
subject "and" sufficiency of title, if either requirement fails, the
act is unconstitutional. I believe L.B. 574 fails the requirement
that the bill be limited to one subject.

As the majority opinion acknowledges, the cases addressing
one subject take at least two paths, and the majority declines
to take this opportunity to clarify the correct approach. The
majority therefore performs two analyses in its consideration
of the bill's compliance with the one subject requirement: one
path starts with an examination of the title and a second starts
with an examination of the substance of the bill. Ultimately,
the majority holds, inter alia, that L.B. 574 is constitutional
because the "main purpose" of L.B. 574 "broadly construing
L.B. 574, all its provisions certainly are encompassed within
the regulation of permissible medical care."

The title of L.B. 574 states:

A BILL FOR AN ACT relating to public health and
welfare; to amend sections 38-192, 38-193, and 38-196,
Reissue Revised Statutes of Nebraska, and sections
38-178, 38-179, 38-2021, and 38-2894, Revised Statutes
Cumulative Supplement, 2022; to adopt the Preborn
Child Protection Act and the Let Them Grow Act; to pro-
vide for discipline under the Uniform Credentialing Act;
to harmonize provisions; to provide operative dates; to

- 259 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

provide severability; to repeal the original sections; and to declare an emergency.

The Preborn Child Protection Act concerns abortion. See Neb. Rev. Stat. §§ 71-6912 to 71-6917 (Supp. 2023). The Let Them Grow Act concerns gender-affirming care. See Neb. Rev. Stat. §§ 71-7301 to 71-7307 (Supp. 2023). For comparison, I note that a Tennessee gender-affirming related statute that addresses health care providers is titled "Prohibition on Medical Procedures Performed on Minors Related to Sexual Identity." Tenn. Code Ann. § 68-33-101 et seq. (2023). See *L. W. by and through Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), *cert. granted* No. 23-477, 2024 WL 3089532 (U.S. June 24, 2024). In the hunt for a subject, it seems to me that the Tennessee law makes a more convincing case that the bill is about health care providers.

The majority opinion notes that credentialing is mentioned in the title; § 8 of L.B. 574 in both the abortion act and gender-affirming act refer to unprofessional conduct of health care providers. Other provisions, however, provide for the availability of civil actions and many other matters not connected to credentialing. See *Ives v. Norris*, 13 Neb. 252, 13 N.W. 276 (1882) (finding bill in part unconstitutional based on distinction between regulating an area and creating an economic penalty for violation thereof not reflected in title). And another part of the bill directs a government agency to create protocols. Although there are 20 sections in L.B. 574, the majority concludes that 2 sections regarding the discipline of medical professionals predominate and that therefore, L.B. 574 is designed to regulate medical providers. Cf. *Charron v. Miyahara*, 90 Wash. App. 324, 950 P.2d 532 (1998) (concluding in part in titling challenge that the credentialing portion of bill should be stricken from act because title does not give sufficient notice).

I have remarked above on the weaknesses of using a "main purpose" test, instead of the text's "one subject," and the risks inherent in endorsing "object no matter how broad." I believe

- 260 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

the majority used the wrong test in its one subject analysis when it invented a main purpose and then compared the two acts to that purpose, rather than comparing the acts to each other. Based on the constitutional text and cases, in my view, the applicable one subject jurisprudential analytical path in a one subject challenge requires that the provisions of the bill be related to one another and work in concert. I believe the substance of the various acts should be rationally or logically related, although not strictly related. Early cases endorse this approach. In my view, they are more consistent with article III, § 14, than the majority's approach.

The author of *Van Horn v. State*, 46 Neb. 62, 64 N.W. 365 (1895), also wrote *Trumble v. Trumble*, 37 Neb. 340, 55 N.W. 869 (1893). In *Trumble*, the court warned that a bill violates the one subject requirement where several "subjects, while remotely related, are not necessarily interdependent, and cannot be said to combine into a single subject of legislation." 37 Neb. at 345, 55 N.W. at 870. In *Nebraska Loan & Building Ass'n v. Perkins*, 61 Neb. 254, 256, 85 N.W. 67, 68 (1901), the court observed that the one subject requirement was adopted to obviate the prior practices of "including in one bill various subjects in nowise related to one another" and the prior practice of combining subjects "regardless of their relations or congruity." Thus, in addition to the text of article III, § 14, the original one subject doctrine of this State endorses a comparison of the various provisions to each other to verify that the parts are related to each other and form one subject. This avoids a "disunity of subject matter." See Millard H. Ruud, "*No Law Shall Embrace More Than One Subject*," 42 Minn. L. Rev. 389, 411 (1958).

The approach of comparing the acts within a bill to each other to determine if they embrace but one subject is in accord with earlier Nebraska cases, and, as the concurrence notes, finds support in many other courts. Forty-three states include "some version of the single-subject rule in their constitutions." Richard Briffault, *The Single-Subject Rule: A State*

- 261 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

*Constitutional Dilemma*, 82 Alb. L. Rev. 1629, 1633 (2018-19). Scholars urge that to satisfy the one subject requirement, there must be a "reasonable nexus between these provisions." Justin W. Evans & Mark C. Bannister, *Reanimating the States' Single Subject Jurisprudence: A New Constitutional Test*, 39 S. Ill. U. L.J. 163, 229 (2015).

Commenting on the multiple subject prohibition, the Georgia Supreme Court stated: "To constitute plurality of subject matter [rendering the act unconstitutional], an [a]ct must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any logical connection with or relation to each other." *Crews v. Cook*, 220 Ga. 479, 481, 139 S.E.2d 490, 492 (1964).

In a case noted in the concurrence, the Minnesota Supreme Court stated:

> To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. . . . [A]ll matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.

*Johnson v. Harrison*, 47 Minn. 575, 577, 50 N.W.923, 924 (1891).

The proposition that the acts must be related to each other to be one subject has recently been applied elsewhere. In *Arizona School Boards Ass'n, Inc. v. State*, 252 Ariz. 219, 501 P.3d 731 (2022), the Arizona Supreme Court examined the separate acts and found that the bill in question violated the one subject rule. The court said that there was an absence of "a common tie between this diverse category of topics" and that the bill contained an array of discordant subjects. *Id*. at 228, 501 P.3d 740.

The Arizona Supreme Court continued that where the bill violates the single subject rule, it is void, the title could not

- 262 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

rehabilitate it, and the court should avoid an inquiry that injects the court more deeply than it should into the legislative process. The court further continued: "An act that violates the single subject rule is void in its entirety because no mechanism is available for courts to discern the act's primary subject." *Id*. I am in agreement, as stated above, and I further agree that it is inappropriate for the court to speculate or invent one subject. Where parts of a bill are unrelated and a bill violates the one subject rule, the Arizona Supreme Court concluded, "[W]e must refrain from endeavoring to ascertain the dominant purpose of the bill, it is unconstitutional and entirely void." *Id*.

*Conclusion.*

Unrelated provisions that happen to do similar things at some level of generality do not dispel the criticism that the bill contains more than one subject. It is not the office of this court to scour the bill in hopes of finding one subject that could conceivably explain inclusion of very different acts in one bill. Subject so broad. As Professor Ruud warned, the one subject requirement is not met in the absence of a "relationship between the specific topics." Millard H. Ruud, "*No Law Shall Embrace More Than One Subject*," 42 Minn. L. Rev. 389, 412 (1958).

I do not agree with the majority's conclusion that the one subject of L.B. 574 is the regulation of medical care providers and that L.B. 574 only indirectly affects others. The regulation of health care providers may well be a topic in L.B. 574, but the bill's provisions invariably impose controls on Nebraska citizens who are not doctors and who are more than mere bystanders. The subject the court inappropriately created overlooks the real world prohibitions on the receipt of medical care. With all due respect, it is not candid to say L.B. 574 regulates health care but does not impact patients. What about the children? What about the parents? And remember the ladies.

- 263 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
PLANNED PARENTHOOD OF THE HEARTLAND v. HILGERS
Cite as 317 Neb. 217

Because L.B. 574 contains unrelated acts, i.e., abortion and gender-affirming care, and because L.B. 574 includes an overwhelming number of sections that do not relate to the subject created by the majority, i.e., regulation of medical professionals, L.B. 574 violates the safeguard in the Nebraska Constitution that a bill should contain only "one subject." I would find L.B. 574 violates the one subject requirement of Neb. Const. art. III, § 14.